UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NICHOLAS ZIMMERMAN,

                Plaintiff,

-against-                                          9:15-CV-1437 (LEK/DEP)

JOSEPH WOLCZYK, *et al.*,

                Defendants.

**DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Nicholas Zimmerman commenced this civil rights action pro se in the United States District Court for the Western District of New York ("Western District") in August 2012. Zimmerman v. Todd, No. 12-CV-0763 (W.D.N.Y. filed Aug. 13, 2012). In his Complaint, Plaintiff asserted claims for the violation of his constitutional rights arising out of his confinement in the custody of the Department of Corrections and Community Supervision ("DOCCS") between July 2009 and November 2011. Dkt. No. 1 ("Complaint").[1] Upon review, Western District Judge Skretny found that "approximately half" of the alleged violations occurred at Auburn Correctional Facility (the "Auburn Claims") and that Plaintiff's remaining claims arose at Attica Correctional Facility (the "Attica Claims"). Dkt. No. 17 ("Transfer Order") at 7.[2] The Auburn Claims were ordered severed, id. at 7–8, 23, and were transferred to the

---

[1] Docket citations are made to the Northern District of New York's docket, which includes all proceedings in the Western District prior to December 2015.

[2] The Auburn Claims were identified by Judge Skretny as the claims alleged in "paragraphs 69 through 81 and 86 and 87" of the Complaint. Transfer Order at 8, 23.

Northern District of New York on December 3, 2015. See Dkt. No. 26 ("January Order") at 2 n.3.

Upon review, this Court construed the Complaint to allege that "Plaintiff was disciplined by defendants Todd, Wolczyk, Graham, and Bezio in violation of his right to due process; Defendants Wosneski, Strickland, Iqbal, Valla, Henderson, Bordonaro, Berns, Widroff, Hernandez, Kaplan, and Devito improperly subjected Plaintiff to a period of restrictive confinement; and Defendants conspired to violate [Plaintiff's] constitutional rights." Jan. Order at 5. Because the Complaint did not allege facts sufficient to plausibly suggest that Plaintiff's constitutional rights had been violated, the Court concluded that the Auburn Claims were subject to dismissal in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Id. at 6–12. In light of his pro se status, plaintiff was afforded leave to file an amended complaint. Id. at 12–14.

On May 4, 2016, Plaintiff filed his Amended Complaint. Dkt. No. 30 ("Amended Complaint"). Plaintiff also filed a Motion to Reconsider, seeking reconsideration of the January Order. Dkt. No. 31 ("Motion").

## II. MOTION FOR RECONSIDERATION

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." Delaney v. Selsky, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing Doe v. N.Y.C. Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)). "In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements." Maye v. New York, No. 10-CV-1260, 2011 WL 4566290,

at *2 n.6 (N.D.N.Y. Sept. 29, 2011) (quoting C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 182 B.R. 1, 2 (N.D.N.Y. 1995)).

Generally, motions for reconsideration are not granted "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A motion to reconsider "is generally not favored and is properly granted only upon a showing of exceptional circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)). Reconsideration should be granted where necessary to correct for "clear error" or to "prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (quoting Collision v. Int'l Chem. Workers Union, Local 217, 34 F.3d 233, 236 (4th Cir. 1994)).

Plaintiff seeks reconsideration of two rulings made in the January Order. Mot. First, Plaintiff claims that the Court erred in concluding that the Complaint did not state a cognizable retaliation claim against Assistant Inspector General ("AIG") T. Todd. Id. at 1–2. Second, Plaintiff contends that his conspiracy claims were improperly dismissed. Id. at 2–3. Plaintiff asks that these claims be reinstated. Id.

As noted, the Court construed the Complaint to assert disciplinary due process claims against numerous defendants, including AIG Todd, the author of the inmate misbehavior report. Jan. Order at 5. Because "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," id. at 7 (quoting Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)), Plaintiff's due process claim against AIG Todd was dismissed with

3

prejudice. Id. In determining the sufficiency of Plaintiff's claims against AIG Todd, the Court considered whether the facts alleged in the Complaint plausibly suggested that the misbehavior report was retaliatory in nature and concluded that they did not. Id. at 7 n.9. With respect to Plaintiff's claims that the defendants had engaged in a "massive conspiracy" to violate his constitutional rights, the Court concluded that Plaintiff's allegations were wholly conclusory and therefore insufficient and that, as drafted, the claims were barred by the intracorporate conspiracy doctrine. Id. at 11–12.

Upon review, the Court finds that nothing in Plaintiff's Motion affords a basis for reconsideration of the January Order. Plaintiff does not claim that there has been a change in the controlling law or that new evidence has come to light; Plaintiff's disagreement with the Court's rulings does not suffice. See Shrader, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). Moreover, because Plaintiff has reasserted these claims in the Amended Complaint, which is before the Court for initial review, Plaintiff has not made any showing that reconsideration of the January Order is necessary to prevent manifest injustice.

Accordingly, Plaintiff's Motion (Dkt. No. 31) seeking reconsideration of the January Order is denied.

## III. SUFFICIENCY OF THE AMENDED COMPLAINT

As did the original Complaint, Compl. at 1, 3, the Amended Complaint identifies twelve individuals as additional plaintiffs. Am. Compl. at 1, 3–4.[3] None of these individuals have

---

[3] Upon their failure to comply with the filing fee requirements for this action, the putative plaintiffs (Vickie DiCola, Sharlyne Gooding, Tomasz Miezkowski, Melissa Mojica, Amy Pinchney, Charity Powers-Stover, Desiray Smith, Crystal Stevens, Carol Willis, James

4

complied with the filing fee requirements or signed the pleading. These individuals are not parties to this action, and all claims asserted on their behalf, Am. Compl. at 8, are dismissed.

In his Amended Complaint, Plaintiff reasserts all of the claims in his original Complaint, i.e., both the Auburn Claims that were transferred to this District and the Attica Claims that remained in the Western District. See Am. Compl.[4] The Attica Claims are not properly before this Court. As a result, the individuals named as defendants in the Amended Complaint because they are alleged to have been personally involved in the Attica Claims (the "Attica Defendants") are not parties to this action.[5]

Based upon the foregoing, the Amended Complaint is accepted for filing and review in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) insofar as Plaintiff asserts claims arising out of his confinement at Auburn Correctional Facility against defendants Todd, Wolczyk, Graham, Bezio, Wosneski, Strickland, Iqbal, Valla, Henderson, Bordonaro, Berns, Widroff, Hernandez, Kaplan, and Devito. As discussed in the January Order, the Auburn Claims arise out of (i) disciplinary proceedings, (ii) a period during which Plaintiff was confined in an

---

Willis, Kristine Barrett, and Jodi Berndt) were terminated. Dkt. No. 11.

[4] Upon review, Judge Skretny of the Western District concluded that the Attica Claims did not survive sua sponte review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), but afforded plaintiff the opportunity to file an amended complaint reasserting the claims that were dismissed without prejudice. Transfer Order at 23. Plaintiff filed an amended complaint in the Western District action in September 2015. Amended Complaint, Zimmerman v. Todd, No. 12-CV-763 (W.D.N.Y. Sept. 8, 2015), ECF No. 23. This amended pleading is awaiting review.

[5] In addition to the thirty-seven Attica Defendants named in the original Complaint, four new Attica Defendants—Senior Counselor Whiteford, Sgt. Olles, Sgt. Shepanski, and Lt. Loverde—are named in the Amended Complaint. Am. Compl. at 7, 18–19.

observation cell at Auburn C.F., and (iii) a massive conspiracy to violate Plaintiff's constitutional rights. See Jan. Order at 4–5.

### A. Disciplinary Proceedings at Auburn C.F.

On July 9, 2009, AIG Todd issued a misbehavior report that charged Plaintiff with engaging in the unauthorized operation of a business. Am. Compl. at 7.[6] Plaintiff alleges in the Amended Complaint that Todd's "main intention" in issuing the misbehavior report was "to stop Mr. Zimmerman from exercising his First Amendment Right to Freedom of Speech." Id. Plaintiff also claims that he was denied due process at the disciplinary hearing conducted by defendant Wolczyk on July 23, 2009 (the "July Hearing"). Id. at 8. More specifically, Plaintiff alleges that he was not allowed to call witnesses at the hearing or to gather documents in order to prepare his defense, and that Hearing Officer Wolczyk was not "fair and impartial." Id. As alleged in the Amended Complaint, in addition to having his correspondence privileges restricted, Plaintiff was sanctioned with six months confinement in the special housing unit ("SHU"), six months loss of privileges, and eight months loss of recommended good time. Id.[7] The disciplinary determinations were affirmed by Superintendent Graham and by Director of Special Housing ("DSH") Bezio. Id. at 8–9. Based upon the foregoing, Plaintiff claims that his rights protected

---

[6] Plaintiff describes these activities as the operation of "Madison Avenue Entertainment Group," an enterprise responsible for maintaining the website "FREENicholasZimmerman.com," Am. Compl. at 7, and marketing a book titled "My Side of The Story/The Investigation/Part I," a CD titled "New York's Illest," "as well as several other items that are adverse to [DOCCS's] public image," Compl. at 2.

[7] Plaintiff claims that the severity of the disciplinary sanctions, specifically his extended SHU confinement for a nonviolent offense, constituted cruel and unusual punishment in violation of the Eighth Amendment. See Am. Compl. at 2, 8.

6

under the First, Eighth, and Fourteenth Amendments were violated by defendants Todd, Wolczyk, Graham, and Bezio.

After reviewing the Amended Complaint, the Court finds that Plaintiff has alleged facts that plausibly suggest he was denied due process at the July Hearing. Additionally, in light of the additional facts alleged in the Amended Complaint regarding the sanctions imposed at the July Hearing, it appears that Plaintiff enjoyed a protected liberty interest in the disciplinary proceedings. See Am. Compl. at 8. However, because Plaintiff was subjected to "mixed sanctions" affecting both the duration and the conditions of his confinement, his due process claims as drafted are barred by the favorable termination rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court held that a claim for money damages is not cognizable under 42 U.S.C. § 1983 if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (citation omitted).[8] In a subsequent case, the Supreme Court made clear that Heck's favorable termination rule applies to challenges made under § 1983 to procedures used in disciplinary proceedings that deprived a prisoner of good-time credits. Edwards v. Balisok, 520 U.S. 641, 646–48 (1997).

In Peralta v. Vasquez, 467 F.3d 98, 104 (2d Cir. 2006), the Second Circuit ruled that Heck's "favorable termination" rule was not an absolute bar to consideration of due process

---

[8] Absent such a showing, an inmate may only seek relief in the federal courts through a petition for habeas corpus. See Jenkins v. Haubert, 179 F.3d 19, 23 (2d Cir. 1999).

claims arising from a disciplinary proceeding at which the plaintiff was subject to "mixed sanctions." The Second Circuit held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but . . . can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement*." Id.

Here, because Plaintiff has not demonstrated that the disciplinary determinations have been invalidated, the Court finds that Heck bars his disciplinary due process claims unless Plaintiff "abandon[s], not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in [this] § 1983 suit." Id. Accordingly, the Court directs Plaintiff to advise the Court in writing, within thirty days of the filing date of this Decision and Order, whether he waives *for all time* all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (i.e., the recommended loss of eight months good time) in order to proceed with his claims challenging the sanctions affecting the conditions of his confinement. The Court specifically advises Plaintiff that the Court will deem his failure to file this statement (referred to as a "Peralta Waiver") within the required time to constitute his refusal to waive these claims, and such failure will thus result in the dismissal of his due process claims against Hearing Officer Wolczyk, Superintendent Graham, and DSH Bezio.[9]

---

[9] The dismissal of these due process claims would be without prejudice. See Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) (stating that dismissal under Heck is without prejudice and that, if the plaintiff's conviction is later declared invalid or called into question by a federal court's issuance of a writ of habeas corpus, the suit may be reinstated).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to Plaintiff's First and Eighth Amendment claims arising out of the challenged disciplinary proceedings.

**B. Restrictive Confinement**

In his Amended Complaint, Plaintiff alleges that defendants Wosneski, Strickland, Iqbal, Valla, Henderson, Bordonaro, Berns, Widroff, Hernandez, Kaplan, and Devito improperly confined him in an "observation cell" for approximately two months, from August 17, 2009, through October 23, 2009. Am. Compl. at 8–10.[10] Plaintiff claims that this confinement violated his rights protected under the First, Eighth, and Fourteenth Amendments. Id.

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was constitutionally protected; (2) the defendants took adverse action against the plaintiff, i.e., action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a substantial or motivating factor in the defendant's decision to take action against the plaintiff. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gill v. Pidlypchak, 389 F.3d 379, 380–81 (2d Cir. 2004)

---

[10] These defendants all appear to be mental health professionals, and are identified as social workers, psychologists and medical doctors. Am. Compl. at 4–5. As alleged, following Plaintiff's initial confinement by defendant Wosneski, Plaintiff's status was reviewed frequently and affirmed by one or more of the defendants. Id. at 9–10.

(citing Dawes v. Walker, 239 F.3d 489, 492 (2d. Cir. 2001); Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).

Plaintiff claims in the Amended Complaint that he was confined in an observation cell in retaliation for his "insistence of exercising his First Amendment Right to Freedom of Speech through his website." Am. Compl. at 8. This claim is wholly conclusory and is not supported by factual allegations which plausibly suggest that there was a causal connection between Plaintiff's protected speech and the determinations made by any of the defendants regarding Plaintiff's confinement status. As a result, the Court finds that Plaintiff has not alleged facts in the Amended Complaint which plausibly suggest that his confinement in an observation cell was retaliatory in nature. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. E.g., Wilson v. Seiter, 501 U.S. 294, 296–97 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain, or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle, 429 U.S. at 102–03. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). A viable Eighth Amendment claim must contain both an objective and a

subjective component. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. at 834 (quoting Wilson, 501 U.S. at 298). To satisfy the subjective component, the defendant "must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

Upon review of the Amended Complaint, the Court finds that Plaintiff does not allege any facts in this pleading regarding the circumstances under which he was confined for observation, nor does he allege facts that plausibly suggest that the conditions of that confinement were unduly harsh or that the defendants acted with "deliberate indifference" to his health and safety. See, e.g., Trammel v. Keane, 338 F.3d 155, 161–66 (2d Cir. 2003) (discussing Eighth Amendment analysis where a period of restrictive confinement involved "competing institutional concerns").[11] As a result, the Court finds that the Amended Complaint does not set forth plausible claims that this period of restricted confinement violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

With respect to Plaintiff's claim that he was confined in an observation cell without due process in violation of the Fourteenth Amendment, the Court has considered whether he has alleged facts in the Amended Complaint which plausibly suggest that he enjoyed a protected liberty interest in being free from that confinement. As discussed in the January Order, a liberty interest will be found where the challenged confinement imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Jan. Order at 8–9 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). While not the only factor to be

---

[11] Plaintiff's conclusory assertion that his confinement constituted an "[u]nreasonable [s]eizure," Am. Compl. at 8, does not give rise to a cognizable Fourth Amendment claim against these defendants.

considered, the duration of the challenged confinement remains significant under Sandin. See Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).[12] "[T]he Second Circuit generally takes the position that confinement in SHU, without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under 'normal conditions.'" Jan. Order at 8 (citing Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); Colon, 215 F.3d at 231).

Here, Plaintiff states that he was confined for observation for approximately sixty days, and does not allege that he was confined under conditions of extreme hardship. Upon review, the Court finds that Plaintiff has not alleged facts which even suggest that this confinement was in "atypical or significant" for purposes of the Fourteenth Amendment.

In so ruling, the Court notes that Plaintiff's reliance in the Amended Complaint on the provisions of New York Mental Hygiene Law Article 9, Am. Compl. at 8, which concerns the involuntary admission to mental hospitals of people who are mentally ill and in need of involuntary care and treatment,[13] does not warrant a different result. More specifically, Plaintiff

---

[12] For example, segregation for a period of thirty days was found by the Supreme Court in Sandin not to impose a significant hardship on an inmate. 515 U.S. at 485–86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of a prisoner's normal confinement. Id.

[13] Pursuant to section 9.40 of the Mental Hygiene Law, a comprehensive psychiatric emergency program can retain a person for observation for a period of seventy-two hours when the individual is "alleged to have a mental illness for which immediate observation, care and treatment in such program is appropriate and which is likely to result in serious harm to the person or others." N.Y. Mental Hyg. Law § 9.40(a); see Kraft v. City of New York, 696 F. Supp. 2d 403, 415 (S.D.N.Y. 2010), aff'd, 441 F. App'x 24 (2d Cir. 2011). Under section 9.39, a hospital can admit a person found to pose a danger to himself or others and retain him for a period of fifteen days. N.Y. Mental Hyg. Law § 9.39(a). Subsequent to such an admission, a court hearing "on the question of need for immediate observation, care, and treatment" may be requested by the patient or by any relative, friend, or the mental hygiene legal service. Id.

contends that after being held for seventy-two hours in an observation cell at Auburn Correctional Facility, he should have been moved to a hospital, "where he would have been afforded a judicial hearing to challenge his confinement." Am. Compl. at 8.

It is well settled in this Circuit that "[a] violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." Cusamano v. Sobek, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (collecting cases). Because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process," Russell v. Coughlin, 910 F.2d 75, 78 n. 1 (2d Cir. 1990), violations of state law procedural requirements do not alone constitute a deprivation of due process. Moreover, Plaintiff's reliance on the provisions of the Mental Hygiene Law appears to be misplaced, both because Article 9 does not govern the commitment of mentally ill prisoners to psychiatric hospitals,[14] and because Plaintiff was not so confined. Plaintiff's claims arise solely out of the alleged failure to comply with the cited state law procedures, which does not alone establish a constitutional violation.

Based upon the foregoing, the Court finds that Plaintiff has not cured the pleading deficiencies identified in the January Order regarding his claim that he was confined in an observation cell in violation of his Fourteenth Amendment right to due process. As a result, this claim is dismissed for failure to state a claim upon which relief may be granted.

---

[14] Correction Law section 402 instead governs the commitment of mentally ill prisoners to psychiatric hospitals. State ex rel. Harkavy v. Consilvio, 859 N.E.2d 508, 511 (N.Y. 2006). This statute is intended to benefit and protect prisoners from administrative abuse of discretion and establishes a psychiatric evaluation process which precedes an inmate's involuntary commitment. Id.

## C. Conspiracy

Plaintiff claims in the Amended Complaint that he was subjected to a "massive inter-departmental conspiracy" to violate his constitutional rights. Am. Compl. at 2, 7.[15] As alleged, the conspiracy began when defendant Todd issued an inmate misbehavior report and was "joined" by each defendant (regardless of their professional capacity or relationship either to Plaintiff or to the other defendants) at the moment he or she engaged in conduct that Plaintiff deems wrongful. See id. at 7–10.[16]

To state a cognizable conspiracy claim under 42 U.S.C. § 1983, a complaint must allege that (1) an agreement existed between two or more people, including at least one state actor, (2) "to act in concert to inflict an unconstitutional injury" on the plaintiff, and (3) that an overt act was committed in furtherance of that goal. Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002); see also Concepcion v. City of New York, No. 05-CV-8501, 2008 WL 2020363, at *5 (S.D.N.Y. May 7, 2008) (affirming the continued viability of the Ciambriello standards when analyzing a conspiracy claim on a motion to dismiss). "An agreement must be proven with specificity as bare allegations of a conspiracy supported by allegations of conduct easily explained as individual action is insufficient." Gillard v. Rovelli, No. 12-CV-0083, 2013 WL 5503317, at *13 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.). Vague and conclusory allegations that the defendants engaged in a conspiracy must be dismissed. Ciambriello, 292 F.3d at 325; see also

---

[15] The Amended Complaint asserts conspiracy claims arising under 42 U.S.C. §§ 1983, 1985, and 1986. Am. Compl. at 3. In the January Order, the Court concluded that Plaintiff's conspiracy claims did not survive sua sponte review. Jan. Order at 11–12.

[16] According to Plaintiff, the conspiracy continued and was "joined" by each of the Attica Defendants upon Plaintiff's transfer to that facility in October 2009. See Am. Compl. at 10–19.

14

Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" Flores v. Levy, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sept. 23, 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Upon review of the original Complaint, the Court found that Plaintiff's conspiracy claims were asserted in wholly conclusory terms and therefore were not sufficient to survive the Court's review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Jan. Order at 11–12. The Court has reviewed the Amended Complaint thoroughly and with due regard for Plaintiff's status as a pro se litigant. On the basis of that review, the Court finds that Plaintiff has not cured this pleading deficiency with factual allegations that plausibly suggest the existence of a conspiracy to violate his protected rights. Plaintiff sets forth no facts that even suggest that any of the defendants reached an agreement to engage in unconstitutional conduct, let alone what actions were taken in furtherance of that agreement.

In addition, the conspiracy claims set forth in the Amended Complaint do not survive the Court's sua sponte review because as pleaded they are barred by the intra-corporate conspiracy doctrine. See Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) (applying, in the context of 42 U.S.C. § 1985, "the familiar doctrine that there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment"). For all the reasons set forth above, Plaintiff's conspiracy claims are dismissed.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 31) seeking reconsideration of the January Order is **DENIED**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 30) is **ACCEPTED** for filing insofar as Plaintiff asserts claims on his own behalf arising out of his confinement at Auburn Correctional Facility against defendants Todd, Wolczyk, Graham, Bezio, Wosneski, Strickland, Iqbal, Valla, Henderson, Bordonaro, Berns, Widroff, Hernandez, Kaplan, and Devito; and it is further

**ORDERED**, that the Clerk add "T. Todd, Assistant Inspector General," as a defendant in this action; and it is further

**ORDERED**, that Plaintiff's First and Eighth Amendment claims against defendants Todd, Wolczyk, Graham, and Bezio arising out of the disciplinary proceeding survive the Court's sua sponte review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and require a response; and it is further

**ORDERED**, that if Plaintiff wants to proceed with his Fourteenth Amendment due process claims against defendants Wolczyk, Graham, and Bezio challenging the disciplinary sanctions imposed at the July Hearing affecting the conditions of his confinement, he must **submit the required Peralta Waiver within thirty (30) days** advising that he **waives for all time** all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (i.e., the recommended loss of good time); and it is further

**ORDERED**, that in the event Plaintiff fails to file the Peralta Waiver **within thirty (30) days** of the filing date of this Decision and Order, he will be deemed to have refused to waive the claims relating to disciplinary sanctions affecting the duration of his confinement arising from the July Hearing, and Plaintiff's due process claims against defendants Wolczyk, Graham, and Bezio shall, without further order of the Court, be **DISMISSED without prejudice**; and it is further

**ORDERED**, that upon Plaintiff's filing of the required Peralta Waiver and, in all events, no later than **thirty (30) days** after the filing date of this Decision and Order, the Clerk shall return the file to the Court for review and for issuance of an order directing service of process on the remaining defendants; and it is further

**ORDERED**, that Plaintiff's remaining claims are dismissed in accordance with 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the Clerk shall terminate Wosneski, Strickland, Iqbal, Valla, Henderson, Bordonaro, Berns, Widroff, Hernandez, Kaplan, and Devito as defendants in this action; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on

submitted papers, without oral argument, unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

DATED: July 7, 2016
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge