IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

NICHOLAS ZIMMERMAN,

                           Plaintiff,                         Civil Action No.
                                                                9:15-CV-1437 (LEK/DEP)

      v.

T. TODD, Assistant Inspector General,
*et al.*,

                           Defendants.

---

APPEARANCES:

FOR PLAINTIFF:

NICHOLAS ZIMMERMAN, *Pro se*
02-A-1663
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

FOR DEFENDANTS:

HON. BARBARA D. UNDERWOOD          RYAN HICKEY, ESQ.
New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought by *pro se* plaintiff Nicholas Zimmerman against individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to 42 U.S.C. § 1983. Although plaintiff's original complaint included additional causes of action, and named a host of defendants, the only claims that remain pending in this court arise under the First, Eighth, and Fourteenth Amendments, and are asserted against four named defendants.

Currently pending before the court are cross-motions brought by the parties seeking the entry of summary judgment in their favor. For the reasons set forth below, I recommend that plaintiff's motion be denied, defendants' motion be granted, and plaintiff's amended complaint be dismissed in its entirety.

I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS. *See generally* Dkt. No. 30. Although he is now confined elsewhere, at the times relevant to the claims in this case, plaintiff was incarcerated in the Auburn Correctional Facility ("Auburn") located in Auburn, New York. *Id.*

Defendant Thomas Todd, a Senior Investigator for the New York State Office of Special Investigations ("OSI"),[2] issued a misbehavior report to the plaintiff on July 9, 2009, accusing him of violating two prison rules. Dkt. No. 57-2 at 37; Dkt. No. 66-4 at 5. In particular, the misbehavior report alleges that plaintiff had been working with "non-family members" to run a business identified as the Madison Avenue Entertainment Group ("MAEG"). *Id.* Based on defendant Todd's investigation, he concluded that the MAEG is a distributor of a book authored by plaintiff that describes his attempted escape from the Sing Sing Correctional Facility ("Sing Sing") in

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003). In this case, in light of the parties' cross-motions for summary judgment, the court draws "all factual inferences . . . against the party whose motion is under consideration." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (quotation marks omitted).

[2]    The OSI was formerly known as the office of the DOCCS Inspector General ("IG"). Dkt. No. 66-7 at 1.

2003. *Id.* The website for the MAEG included links to other websites, as well, including www.FREENicholasZimmerman.com and www.Myspace.com/FreeNicholasZimmerman.correspondence. *Id.* Defendant Todd's misbehavior report alleged that, utilizing those websites, plaintiff, "through his accomplices, solicit[s] viewers" to purchase items, "such as compact discs" and that the proceeds "fund [plaintiff]'s ongoing legal work." *Id.*

A tier three disciplinary hearing regarding the misbehavior report was conducted, beginning on July 14, 2009, and concluding on July 23, 2009, by defendant Joseph Wolczyk, a DOCCS Commissioner Hearing Officer.[3] Dkt. No. 66-1 at 1, 4; Dkt. No. 66-4 at 4. During the hearing, plaintiff requested that two unidentified individuals testify on his behalf because, according to plaintiff, they were employed by the DOCCS IG and had previously investigated his involvement in FREENicholasZimmerman.com and the MAEG in 2008, but did not issue

---

[3]      The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d at 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

a misbehavior report as a result of their investigation. Dkt. No 66-13 at 50.

Defendant Wolczyk denied plaintiff's request to have the individuals testify

after determining that the information they possessed regarding plaintiff

was irrelevant to defendant Todd's investigation and misbehavior report.

Dkt. No. 57-2 at 42; Dkt. No. 66-1 at 6; Dkt. No. 66-4 at 6.

Defendant Todd testified at plaintiff's disciplinary hearing, both

confidentially and on the record. Dkt. No. 66-5 at 6-23; Dkt. No. 57-2 at 42.

Defendant Wolczyk determined that some of defendant Todd's testimony

would reveal "the methods of the OSI's investigation . . . into plaintiff's

correspondence activities" and therefore would not be appropriate for

plaintiff to hear because it might jeopardize the security and safety of the

prison, as well as the integrity of future OSI investigations. Dkt. No. 66-1 at

9.

At the conclusion of the hearing, defendant Wolczyk found plaintiff

guilty on both disciplinary charges in the misbehavior report. Dkt. No. 57-2

at 44; Dkt. No. 66-1 at 10-11; Dkt. No. 66-4 at 2. As a result of his finding,

defendant Wolczyk sanctioned plaintiff to six months of confinement in the

facility's special housing unit ("SHU"), and six months loss of privileges,

together with a recommended eight-month loss of good time credits. Dkt.

No. 57-2 at 44; Dkt. No. 66-4 at 2. Defendant Harold Graham, the

superintendent at Auburn, and defendant Norman Bezio, the DOCCS

Director of Special Housing/Inmate Disciplinary Program, denied plaintiff's

appeals of defendant Wolczyk's disciplinary hearing determinations. Dkt.

No. 57-2 at 51-52.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about August 13, 2012, by the

filing of a complaint in the Western District of New York. Dkt. No. 1. While

the original complaint included several other individuals as named

plaintiffs, with the exception of plaintiff Zimmerman, none of the plaintiffs

filed an application to proceed *in forma pauperis* ("IFP") or paid the

requisite filing fee. Dkt. Nos. 6, 11, 12, 14. Accordingly, Western District of

New York District Judge Richard J. Arcara issued an order on December

1, 2014, dismissing the action "as to all plaintiffs except plaintiff

Zimmerman." Dkt. No. 11 at 7. Thereafter, following review of plaintiff's IFP

request and complaint, pursuant to 28 U.S.C. §§1915(e), 1915A, Western

District of New York Senior District Judge William M. Skretny issued an

order, *inter alia*, granting plaintiff permission to proceed without the

prepayment of filing fees and severing certain claims from the complaint

and transferring them to this district. Dkt. No. 17.

Upon receipt of the severed and transferred claims in this district,

Senior District Judge Lawrence E. Kahn reviewed those claims implicating the events at Auburn and issued a decision and order dismissing the claims with leave to replead. Dkt. No. 26. On May 4, 2016, plaintiff filed an amended complaint in this district against several individuals. Dkt. No. 30. Pursuant to 28 U.S.C. §§1915(e), 1915A, Judge Kahn reviewed plaintiff's amended complaint and dismissed all of the claims set forth in it, with the exception of the First and Eighth Amendment causes of action asserted against defendants Todd, Wolczyk, Graham, and Bezio, and directed plaintiff to file a *Peralta* waiver[4] if he wished to pursue his Fourteenth Amendment due process claims against defendants Wolczyk, Graham, and Bezio in the context of this section 1983 action. Dkt. No. 37. Following receipt of plaintiff's *Peralta* waiver, Judge Kahn dismissed the Fourteenth

---

[4]    The *Peralta* waiver issue was discussed in Judge Kahn's decision and order dated July 8, 2016. Dkt. No. 37 at 7-8. Judge Kahn explained as follows:

> In *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006), the Second Circuit ruled that . . . [the] 'favorable termination' rule [derived from *Heck v. Humphrey*, 512 U.S. 477 (1994),] was not an absolute bar to consideration of due process claims arising from a disciplinary proceeding at which the plaintiff was subject to 'mixed sanctions.' The Second Circuit held that 'a prisoner subject to such mixed sanctions can proceed separately, under [section] 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, but . . . can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.'

*Id.* (emphasis omitted) (quoting *Peralta*, 467 F.3d at 104).

7

Amendment due process claims relating to disciplinary sanctions imposed on plaintiff that affected the duration of his confinement but otherwise directed that the due process claims asserted against defendants Wolczyk, Graham, and Bezio proceed. Dkt. No. 42.

On September 13, 2017, following the conclusion of discovery in the matter, plaintiff filed a motion for summary judgment in his favor. Dkt. No. 57. In response, on December 11, 2017, defendants filed a cross-motion seeking the entry of summary judgment dismissing plaintiff's remaining claims. Dkt. No. 66. Both motions are now fully briefed and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

8

(1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no

reasonable trier of fact could rule in favor of the non-moving party. *Bldg.*

*Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d

Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary

judgment appropriate only when "there can be but one reasonable

conclusion as to the verdict").

    B.    <u>Plaintiff's First Amendment Retaliation Claim</u>

    Plaintiff's amended complaint asserts a First Amendment retaliation

claim against defendant Todd in connection with his issuance of a

misbehavior report to plaintiff on July 9, 2009. Dkt. No. 30 at 7. In

particular, plaintiff contends that defendant Todd retaliated against him

because he was exercising his First Amendment free speech rights by

operating the website FREENicholasZimmerman.com. *Id.*

    A cognizable section 1983 retaliation claim lies when prison officials

take adverse action against an inmate that is motivated by the inmate's

exercise of a constitutional right, including the free speech provisions of

the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir.

2000) ("In general, a section 1983 claim will lie where the government

takes negative action against an individual because of his exercise of

rights guaranteed by the Constitution or federal laws."). As the Second

Circuit has repeatedly cautioned, however, because such claims are easily

incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To succeed on a claim under section 1983 for retaliatory conduct, a plaintiff establish that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).[5]

In this case, plaintiff's claim fails because he cannot establish that he engaged in constitutionally protected conduct. Plaintiff's claim is premised

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

upon his contention that his operation of a website and his correspondence with outside businesses constituted protected conduct, notwithstanding the DOCCS regulations prohibiting inmates from operating businesses and soliciting goods and services. Dkt. No. 57 at 1. Plaintiff has offered no legal support for his contention, and the court has found none.

The undisputed record in this case shows that the websites with which plaintiff was affiliated solicited business, including by urging people to purchase a book authored by plaintiff and compact discs. Dkt. No. 66-4 at 7-15. The websites also informed visitors that they could send correspondence and money to plaintiff in prison. *Id.* In addition, there is undisputed record evidence that plaintiff was engaged in business activity, including to request advertising and graphic designs. *Id.* at 22, 28-31. Such conduct was in direct violation of DOCCS Directive 4422, which prohibits inmates from using the mail to "conduct a mail order or other business" or "use their correspondence privileges to solicit or otherwise commercially advertise for money, services, or goods." Dkt. No. 66-3 at 4. A prison official's enforcement of prison regulations that restrict an inmate's First Amendment right to freedom of speech is constitutional if enforcement is tied to a legitimate penological interest. *See Giano v.*

12

*Senkowski*, 54 F.3d 1050, 1052-53 (2d Cir. 1995) ("A prison inmate. . .
retains those First Amendment rights that are not inconsistent with his
status as a prisoner or with the legitimate penological objectives of the
corrections system."). In this case, in light of the fact that the book that
plaintiff authored and offered for sale on his website detailed his attempted
prison escape from Sing Sing in 2003, enforcement of DOCCS Directive
4422 by defendant Todd did not violate plaintiff's constitutional rights.

Because no reasonable factfinder could conclude that plaintiff
engaged in constitutionally protected conduct by operating a business in
violation of prison regulations, I recommend that his retaliation claim be
dismissed.[6]

### C.    Plaintiff's Fourteenth Amendment Due Process Claims

Construing plaintiff's submissions liberally, I perceive that plaintiff's
due process claims are based upon the following allegations: (1)
defendant Todd unlawfully obtained a mail-watch order with respect to
plaintiff and did not incorporate a copy of the order into the disciplinary
hearing record; (2) defendant Wolcyzk concealed the names of the

---

[6]    Because I have found that plaintiff cannot establish that he engaged in
constitutionally protected conduct, I have not examined the record to determine
whether a reasonable factfinder could conclude that the adverse action and causation
prongs of the controlling retaliation test have been satisfied.

"accomplices" referenced in the misbehavior report; (3) defendant Wolczyk denied plaintiff's request to call certain witnesses at the disciplinary hearing; (4) defendant Wolczyk was not a fair and impartial hearing officer; (5) defendant Wolczyk did not have sufficient evidence to find plaintiff guilty of the charges included in the misbehavior report; and (6) defendants Graham and Bezio affirmed the disciplinary hearing determination knowing there was insufficient evidence to support a guilty finding. Dkt. No. 30 at 7-9; *see also generally* Dkt. No. 57.

### 1.   Mail Watch Order

The focus of the portion of plaintiff's due process claim involving the mail-watch order he was under at the time defendant Todd issued plaintiff the misbehavior report in July 2009 is unclear. *See generally* Dkt. No. 57. A significant portion of plaintiff's motion papers involve the description of state regulations concerning mail-watch orders. Yet, plaintiff also contends that he was not provided a copy of the order in connection with the disciplinary hearing. Dkt. No. 57 at 4-6. Plaintiff also seems to argue that the basis for issuance of the mail-watch order was insufficient. *Id.* at 6-9.

There is no evidence in the record that defendants violated any state regulation or prison directives in connection with plaintiff's mail watch. In accordance with DOCCS Directive 4422, the superintendent of a facility

may authorize a mail-watch of incoming and/or outgoing mail of an inmate. Dkt. No. 66-3. On June 25, 2009, defendant Todd submitted a request to defendant Graham to authorize a sixty-day mail-watch of plaintiff's incoming and outgoing mail "based on a confidential investigation being conducted by the Inspector General's Office[.]" Dkt. No. 66-9. The undisputed record evidence reflects that the mail-watch in fact yielded evidence that plaintiff was conducting business activity, causing defendant Todd to issue the misbehavior report to plaintiff. Dkt. No. 66-7 at 2.

To the extent plaintiff alleges that his due process rights were denied because he was not provided a copy of the mail-watch order in connection with the disciplinary hearing, I have found no authority for such a requirement. Plaintiff was provided with the evidence upon which defendant Wolcyzk relied in rendering his disciplinary hearing determination, which included screenshots of his websites that solicited business, letters plaintiff wrote to outside businesses, and testimony by defendant Todd. *See generally* Dkt. No. 66-5.

Because no reasonable factfinder could conclude that plaintiff's due process rights were violated in connection with the mail-watch order, I recommend defendants' motion be granted with respect to this portion of plaintiff's Fourteenth Amendment claim.

15

2. Concealment of "Accomplices" and Permitting
Confidential Testimony by Defendant Todd

Plaintiff next contends that defendant Wolczyk violated his

procedural due process rights by refusing to disclose to plaintiff during the

disciplinary hearing the identities of the individuals to which defendant

Todd referred in his misbehavior report as "accomplices." Dkt. No. 57 at

12, 16. Defendant Wolczyk, however, did not rely on any information

provided by those individuals in rendering his disciplinary hearing

determination. Dkt. No. 66-1 at 7. This is because the evidence submitted

at the hearing, including printouts of the websites with which plaintiff was

affiliated, confirmed that plaintiff was soliciting business in violation of

DOCCS Directive 4422. *Id.* Accordingly, even assuming that plaintiff had a

procedural due process right to know the identities of the "accomplices" to

whom the misbehavior report referred, failure to disclose the identities was

harmless.

Plaintiff also argues that, by permitting defendant Todd to testify

confidentially, defendant Wolczyk denied him due process. *Id.* at 16. The

Supreme Court, however, has concluded that inmates do not possess a

constitutional right to confront or cross-examine witnesses in prison

disciplinary hearings. *Wolff v. McDonnell*, 418 U.S. 539, 567-68 (1974). In

addition, "[c]ourts have recognized . . . that the right to know evidence

16

supporting prison disciplinary rulings is not absolute." *Sira v. Morton*, 380 F.3d 57, 74 (2d Cir. 2004). Where disclosure of the evidence supporting a disciplinary hearing determination would risk the safety and security of a prison, "hearing officers may properly decline to inform an inmate of the adverse evidence." *Sira*, 380 F.3d at 75.

In this case, defendant Wolczyk permitted defendant Todd to testify to "the methods of the OSI's investigation . . . into plaintiff's correspondence activities" outside the presence of plaintiff in light of plaintiff's disciplinary history, which included an attempted prison escape. Dkt. No. 66-1 at 9. Defendant Wolczyk determined that "[s]uch information was extremely sensitive and, if revealed to plaintiff, could impede OSI's investigation techniques and potentially jeopardize the safety and security of the facility." *Id.* In light of these legitimate concerns, I find that none of plaintiff's due process rights were violated by permitting defendant Todd to give a portion of his hearing testimony outside of the presence of plaintiff.[7]

---

[7]     It is worth noting that defendant Todd also testified, in part, in plaintiff's presence, and that defendant Wolczyk permitted plaintiff to ask defendant Todd questions during the hearing. Dkt. No. 66-5 at 6-23.

17

### 3. Denial of Witnesses

Plaintiff also alleges that defendant Wolcyzk violated his procedural due process right to call witnesses at the disciplinary hearing. Dkt. No. 30 at 8; Dkt. No. 66-5 at 4. Although it is true that prison inmates retain a constitutional right to call witnesses to testify on their behalf during disciplinary hearings, that right is not unqualified. *Wolff*, 418 U.S. at 566. In particular, hearing officers retain the discretionary authority to refuse to call a witness "on the basis of irrelevance or lack of necessity." *Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir. 1992); *see also Wolff*, 418 U.S. at 566 (envisioning that a hearing officer may deny an inmate's request to call a witness "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases").

In this case, according to plaintiff, the two unidentified individuals he requested be called to testify on his behalf worked for the New York State DOCCS IG and "investigated [his website] in 2008 and concluded no wrongdoing on [his] part." Dkt. No. 57 at 15. Other than plaintiff's allegation that those individuals investigated the same websites that defendant Todd did, there is no evidence in the record that they had any relevant information about plaintiff's business activities that were the subject of the July 9, 2009 misbehavior report. Indeed, aside from defendant Todd, the

18

misbehavior report does not identify any people involved in the investigation into plaintiff's conduct. Dkt. No. 66-2 at 1. Accordingly, defendant Wolczyk determined that the unidentified individuals plaintiff requested to testify on his behalf would have no relevant testimony to offer concerning the July 9, 2009 misbehavior report because they had no involvement in defendant Todd's investigation of plaintiff's mail. Dkt. No. 66-1 at 6.

Based on the record evidence, no reasonable juror could find that defendant Wolczyk violated plaintiff's due process rights by denying his request to call the unidentified individuals as witnesses. *See Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999). ("[A] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony."). Courts have been cautioned not to "second guess" a hearing officer's decision to deny an inmate's witness requests where the hearing officer articulates a basis for his decision. *See Wolff*, 418 U.S. at 566 (explaining that courts "should not be too ready to exercise oversight and put aside the judgment of prison administrators," and noting that "it would be helpful for [hearing officers] to state [their] reasons for refusing to call a witness"). Accordingly, I recommend that the court grant defendants' motion for summary judgment with respect to this part of plaintiff's due process claim.

4.    <u>Fair and Impartial Hearing Officer and Evidence</u>
      <u>Supporting the Determination</u>

Plaintiff next alleges that defendant Wolczyk was not a fair and

impartial hearing officer, and that the hearing determination was not

supported by the evidence adduced at the hearing. Dkt. No. 30 at 8; Dkt.

No. 57 at 17.

The due process clause of the Fourteenth Amendment guarantees

that "[a]n inmate subject to a disciplinary hearing is entitled to. . . an

impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.

1996) (citing *Wolff*, 418 U.S. at 570-71). The Second Circuit has explained

that its "conception of an impartial decisionmaker is one who, *inter alia*,

does not prejudge the evidence and who cannot say . . . how he would

assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d

564, 570 (2d Cir. 1990). "The degree of impartiality required of prison

officials[, however,] does not rise to the level of that required of judges."

*Allen*, 100 F.3d at 259. Indeed, "[i]t is well recognized that prison

disciplinary hearing officers are not held to the same standard of neutrality

as adjudicators in other contexts." *Russell v. Selsky*, 35 F.3d 55, 60 (2d

Cir. 1996). "A hearing officer may satisfy the standard of impartiality if

there is 'some evidence in the record' to support the findings of the

hearing." *Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5

(W.D.N.Y. Oct. 5, 2010) (quoting *Hill*, 472 U.S. at 455).

Plaintiff's claim of hearing officer bias appears to derive from defendant Wolczyk's decision to permit defendant Todd to testify, in part, confidentially and outside of the presence of plaintiff. Dkt. No. 30 at 8; Dkt. No. 56 at 17. As was discussed above in part III.C.2. of this report, however, "when the disclosure of evidence presents [risks to the safety and security of prison operations], hearing officers may properly decline to inform an inmate of the adverse evidence." *Sira*, 380 F.3d at 75. Defendant Wolczyk in this case allowed defendant Todd to testify confidentially, having concluded that revealing the details of the investigation "could impede OSI's investigation techniques and potentially jeopardize the safety and security of the facility." Dkt. No. 66-1 at 9. In light of plaintiff's extensive disciplinary history, which included an escape attempt, defendant Wolczyk's decision to allow defendant Todd to testify confidentially about investigation techniques was reasonable and in no way suggests partiality. Dkt. No. 66-1 at 9; Dkt. No. 66-5 at 14; *see generally* Dkt. No. 66-6; *see Kalwasinski*, 201 F.3d at 109-10 (concluding that the plaintiff's due process claim, which was based on an allegation that the defendant-hearing officer was impartial because he relied on confidential information in rendering his determination, was unfounded). In

addition, plaintiff does not articulate how allowing defendant Todd to testify confidentially biased defendant Wolczyk. The hearing transcript reflects that defendant Wolczyk repeatedly stated he would consider all of the evidence presented at the hearing, and its credibility, before making a decision. Dkt. No. 66-5 at 10, 20, 21, 24.

With respect to plaintiff's argument that the determination was not supported by sufficient evidence, even assuming for the sake of argument that the mail-watch order was obtained in violation of plaintiff's constitutional rights (which it was not, as discussed above in part III.C.1.), "[t]he fruit of the poisonous tree doctrine . . ., which applies to evidence that is obtained during a criminal investigation, . . . has no applicability to prison disciplinary hearings." *Dillhunt v. Theriault*, No. 07-CV-0412, 2009 WL 4985477, at *15 (N.D.N.Y. Dec. 15, 2009) (Suddaby, J., *adopting report and recommendation by* Peebles, M.J.) (citing *Rabb v. McMaher*, No. 94-CV-0614, 1998 WL 214425, at *7 (N.D.N.Y. Apr. 24, 1998) (Pooler, J.)). Accordingly, the evidence upon which defendant Wolczyk relied in finding plaintiff guilty of the charges contained in the misbehavior report was properly considered and constitutes a sufficient basis for his decision. In particular, defendant Wolczyk relied on the letters plaintiff wrote to graphic shops, letters from plaintiff requesting assistance with book

22

editing, and screenshots from plaintiff's websites. Dkt. No. 66-1 at 8; Dkt. No. 66-4 at 22, 28-36. Some of the letters contained budgets, advertising requests, and marketing strategies for FREENicholasZimmerman.com, MAEG, and plaintiff's book and compact discs for sale online. Dkt. No. 66-4 at 22, 28-36. In light of this evidence, it is clear that defendant Wolczyk's determination was based upon "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Accordingly, I recommend that defendants' motion with respect to this portion of plaintiff's due process claim be granted.

### 5.   Hearing Determination Affirmance on Appeal

Plaintiff further alleges that, by affirming defendant Wolczyk's disciplinary hearing determination, defendants Graham and Bezio violated his due process rights. *See, e.g.,* Dkt. No. 30 at 8-9. Because I have concluded that defendant Wolczyk did not violate plaintiff's due process rights in connection with the disciplinary hearing, I recommend the court also grant defendants' motion with respect to plaintiff's due process claim asserted against defendants Graham and Bezio. *See, e.g., Lopez v. Whitmore*, No. 13-CV-0952, 2015 WL 4394604, at *11 (July 16, 2015) (Sannes, J., *adopting report and recommendation by* Baxter, M.J.) (dismissing due process claim against defendant Prack "[b]ecause his only

involvement in plaintiff's claims was to affirm the results of a disciplinary hearing that th[e] court . . . found comported with due process").

D.    Plaintiff's Eighth Amendment Claims

Plaintiff contends that his Eighth Amendment right to be free from cruel and unusual punishment was denied when he was sentenced to serve six months of SHU confinement, with a corresponding loss of privileges, as a result of the disciplinary hearing determination. Dkt. No. 30 at 8; Dkt. No. 57 at 17-19.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and a subjective requirement.

*Walker*, 717 F.3d at 125; *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)); *see also Walker*, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). In a prison setting, basic needs include "food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (*citing*, *inter alia, Rhodes*, 452 U.S. at 347). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'" *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Walker*, 717 F.3d at 125; *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125;

25

*Waldo*, 1998 WL 713809, at *2.

Although plaintiff describes the SHU confinement and loss of privileges as "torture" that eventually resulted in his depression and suicide attempt, there is no evidence in the record that his sanctions deprived him of basic human needs. Dkt. No. 57 at 17-19; Dkt. No. 66-13 at 44. Generally speaking, confinement in a DOCCS facility's SHU under ordinary conditions does not rule afoul of the Eighth Amendment's prohibition of cruel and unusual punishment. *See, e.g.*, *Smith v. Fischer*, No. 07-CV-1264, 2009 WL 632890, at *11 (N.D.N.Y. Feb. 2, 2009) (Lowe, M.J.) ("Although the service of a disciplinary sentence under ordinary conditions prevailing in the SHU may implicate other constitutional rights, it does not rise to a level of constitutional significance under the Eighth Amendment and fails to support a claim of cruel and unusual punishment under that provision." (internal quotation marks and alteration omitted)).

It should be noted, moreover, that plaintiff testified at his deposition that, until his period of SHU confinement, he "never had any serious bouts with depression." Dkt. No. 66-13 at 44. Accordingly, no reasonable factfinder could conclude that sentencing plaintiff to SHU confinement should have been avoided due to a preexisting suicidal ideation or otherwise constituted deliberate indifference. According to plaintiff, upon

learning of plaintiff's suicide attempt, defendant Graham restored plaintiff's correspondence privileges, which occurred less than two weeks after the disciplinary hearing concluded. Dkt. No. 66-13 at 44. In light of this, no reasonable factfinder could conclude that plaintiff was subjected to unconstitutional conditions of confinement that risked either his health or safety. Accordingly, I recommend that the court grant defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff has asserted First, Eighth, and Fourteenth Amendment causes of action against four defendants arising out disciplinary action taken against him for violating prison rules and regulations. Having considered the record evidence presented by the parties' cross-motions for summary judgment, it is respectfully

RECOMMENDED that plaintiff's motion for summary judgment (Dkt. No. 57) be DENIED, defendants' motion (Dkt. No. 66) be GRANTED, and plaintiff's amended complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

report.[8] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:    August 30, 2018
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

---

[8]    If you are proceeding *pro se* and are served with this report and
recommendation by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If
the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then
the deadline is extended until the end of the next day that is not a Saturday, Sunday, or
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Westlaw.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

**c**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.
Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

*REPORT-RECOMMENDATION*

SHARPE, Magistrate J.

    I. *Introduction* [FN2]

> FN2. This matter was referred to the undersigned
> for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

    II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

    III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

> FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

> FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

### IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

### B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacity. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

### C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp 2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged deprivation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.
Jeffrey ALLRED, Plaintiff,
v.
Captain KNOWLES, Hearing Officer Sgt. Noto,
Defendants.

No. 06–CV–0456Sr.
Oct. 5, 2010.

Jeffrey Allred, Queensvillage, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

### *DECISION AND ORDER*

H. KENNETH SCHROEDER, JR., United States Magistrate Judge.

**\*1** Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including entry of final judgment. Dkt. # 14.

Plaintiff, Jeffrey Allred, filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Dkt. # 1. Plaintiff alleges that while an inmate at the Gowanda Correctional Facility ("Gowanda") his rights pursuant to the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated. *Id.* Currently before the Court is defendants' motion for summary judgment. Dkt. # 18. For the following reasons, defendants' motion for summary judgment is granted and the plaintiff's complaint is dismissed in all respects.

### *BACKGROUND*

Plaintiff filed this action on July 11, 2006, against defendants, Michael Knowles and Louis

Noto, pursuant to 42 U.S.C. § 1983, seeking monetary damages. *Id.* The action arises from a misbehavior report issued on or about July 27, 2003 by defendant Noto against plaintiff and the resulting Tier III disciplinary hearing conducted by defendant Knowles. *Id.* Specifically, the complaint alleges the issuance of a false misbehavior report, retaliation and violation of plaintiff's due process rights. *Id.*

At the time of the events alleged in the complaint, plaintiff was an inmate in the care and custody of the New State Department of Correctional Services ("DOCS") housed at Gowanda. Dkt. # 1, p. 2; Dkt. # 20, p. 1. Defendant Knowles was a Captain at Gowanda and his duties included, from time to time, conducting inmate disciplinary hearings. Dkt. # 1, pp. 3–4; Dkt. # 21, pp. 1–2. Sergeant Noto was a DOCS Sergeant on plaintiff's housing unit at Gowanda. Dkt. # 1, p. 4; Dkt. # 22, pp. 1–2.

On July 22, 2003, at approximately 8:30 p.m., Correctional Officer Millich discovered several marijuana cigarettes during a search of inmate Meja's cell. Dkt. # 22, p. 3. Consequently, defendant Noto initiated an investigation into the matter. Dkt. # 1, p. 8; Dkt. # 22, p. 3. Defendant Noto maintained that Meja told him that he had purchased the marijuana cigarettes from plaintiff. Dkt. # 22, p. 3. Based on Meja's identification of plaintiff and information allegedly received from confidential informant(s)—who identified plaintiff as a drug dealer and indicated that the sale in question occurred between 7:00 and 8:00 p.m. on July 22, 2003 in the prison yard—defendant Noto issued a misbehavior report charging plaintiff with violating Inmate Rule 113.25. Dkt. # 1, pp. 22 and 25; Dkt. # 22, p. 3. Inmate Rule 113.25 provides that "an inmate shall not make, possess, sell or exchange any narcotic, narcotic paraphernalia, controlled substance or marijuana. An inmate shall not conspire with any person to introduce such items into the facility." Dkt. # 22, p. 2; *see also* 7 NYCRR § 270.2(14)(xv).

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

On July 28, 2003, a Tier III disciplinary hearing was conducted before defendant Knowles. Dkt. # 1, p. 23; Dkt. # 21, p. 2. At the hearing, plaintiff testified in his own defense that he was at a Nation of Islam ("NOI")/Black studies program during the period of the alleged drug sale in the prison yard. Dkt. # 1, p. 24; Dkt. # 21, p .6. Plaintiff called two other inmates, Ford and Williams, as alibi witnesses. Dkt. # 1, p. 29; Dkt. # 21, p. 7. Ford and Williams attended the NOI/Black studies program with plaintiff, but could not verify the time plaintiff left. Dkt. # 21, pp. 7 and 16. The sign-out sheet for the NOI/Black studies class did not indicate the time plaintiff left, although it indicated that both Ford and Williams left at 7:00 p.m. Plaintiff did not sign back into his housing unit until 8:10 p.m. and no one was able to verify his whereabouts after 7:00 p.m. Dkt. # 21, p. 17. Defendant Knowles interviewed the confidential informant(s) outside the presence of plaintiff and found them to be credible witnesses. Dkt. # 21, pp. 7–8. The confidential informant(s) identified plaintiff as a drug dealer and indicated that the sale of the drugs to Meja occurred between 7:00–8:00 p.m. in the prison yard. *Id.* Meja also testified at the hearing, and recanted his initial identification of plaintiff as the person who sold him drugs. Dkt. # 1, p. 26; Dkt. # 21, p. 11. When asked by defendant Knowles why he initially told defendant Noto that plaintiff was the individual who sold him drugs, Meja answered that he did so because he wanted defendant Noto to "leave [him] alone." Dkt. # 24, Ex. D, p 5. In response, defendant Knowles asked Meja to confirm, by answering in either the affirmative or the negative, if he initially identified plaintiff as the individual who sold him drugs, to which Meja answered in the affirmative. *Id.*

**\*2** On August 3, 2003, at the close of the disciplinary hearing, defendant Knowles entered a guilty finding against plaintiff. Dkt. # 24, Ex. C. Based on the Hearing Disposition Report completed by defendant Knowles, he based his guilt determination on the following evidence: defendant Noto's misbehavior report and his testimony that Meja initially identified plaintiff as the individual who sold Meja drugs in the yard; and the testimony of the confidential informant(s). *Id.* Defendant Knowles imposed a penalty of 12 months of confinement in special housing unit ("SHU") and a loss of privileges between the period August 22, 2003 and August 22, 2004.

### *DISCUSSION AND ANALYSIS*
### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248; *see Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant,* 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the ap-

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

propriate statute. The non-moving party must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Due Process Claim**

**\*3** Plaintiff alleges that defendants deprived him of his constitutional right to procedural due process. Dkt. # 1, p. 42. This allegation appears to be based on the following: (1) that he was not afforded all of the procedural safeguards set forth in *Wolff v. McDonnell*[FN1] during the Tier III disciplinary hearing; and (2) that defendant Knowles was not an impartial hearing officer.

> FN1. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975).

To prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (liberty interest); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998).

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id.,* quoting *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999). In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 64–65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." *Palmer v. Goss,* No. 02 Civ 5804(HB), 2003 U.S. Dist. LEXIS 18103, 2003 WL 22327110 (S.D.N.Y. Oct. 10, 2003), *aff'd, Palmer,* 364 F.3d 60; *Sims v. Artuz,* 230 F.3d 14, 24 (2d Cir.2003) (vacating dismissal of, *inter alia,* procedural due process claims, stating, during little more than a 4 1/2 month period, Sims was sentenced to SHU for a total of nearly 3 1/2 years); *Durran v. Selsky,* 251 F.Supp.2d 1208, 1214 (W.D.N.Y.2003) (quoting *Tookes v. Artuz,* No. 00CIV4969, 2002 U.S. Dist. LEXIS 12540, 2002 WL 1484391 (S.D.N.Y. July 11, 2002)) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"). Here, following the Tier III disciplinary hearing, defendant Knowles imposed a penalty of 12 months of confinement in SHU and a loss of privileges between the period August 22, 2003 and August 22, 2004. Thus, there can be no dispute that plaintiff has demonstrated a protected liberty interest. The issue that remains and that which will be addressed below, is whether plaintiff was deprived of that protected liberty interest without due process. Defendants maintain that plaintiff was not. Dkt. # 21, p. 2; Dkt. # 22, p. 7.

**\*4** In *Wolff,* the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff,* 418 U.S. at 563–66. Specifically, the Supreme Court identified the following procedures: advance written notice of the claimed violation or charges; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety; and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action taken. *Id* . Additionally, the findings must be supported by some evidence in the record. *Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, contrary to plaintiff's contention, he was afforded all of the procedural safeguards set forth in *Wolff.* Dkt. # 24, p 4–5. Plaintiff was provided with a copy of defendant Noto's misbehavior report before the hearing, giving him advance notice of the charge against him.[FN2] Dkt. # 1, p. 22; Dkt. # 21, p. 5. Plaintiff had the opportunity to call witnesses and present evidence. Dkt. # 1, pp. 26, 29; Dkt. #

21, pp. 6, 8. Plaintiff was also provided with a written statement of the guilty finding and the evidence relied on for the disposition. Dkt. # 21, p. 12. The guilty disposition was supported by evidence in the form of defendant Noto's notes; defendant Noto's misbehavior report and testimony; and the testimony of the confidential informant(s), particularly because plaintiff's alibi was uncorroborated. *Id.* at pp. 10–11. Thus, plaintiff's claim that he was deprived of procedural due process fails as a matter of law.

> FN2. Plaintiff concedes this fact. However, he suggests that he was deprived of his due process rights under the standard set forth in *Wolff* because defendant Knowles found him guilty of drug possession, rather than sale of a narcotic substance, which he was charged with in the misbehavior report. Dkt. # 24, p 5. However, inmate Rule 113.25, which plaintiff was charged with in the misbehavior report and found guilty of at the close of the Tier III hearing, encompasses possession *and* sale of a narcotic. Dkt. # 21, pp. 5 and 19.

**Impartial Hearing Officer**

Plaintiff contends, in particular, that his due process rights were violated because defendant Knowles was not an impartial hearing officer. *See* Dkt. # 1, p. 6–8. Plaintiff points to the following to support his allegation: (1) that defendant Knowles was involved in both the Tier III hearing and in the investigation into plaintiff's drug sale; (2) that defendant Knowles instructed Meja to respond affirmatively at the hearing that plaintiff had sold Meja drugs although Meja testified at the hearing that he did not know plaintiff; and (3) that defendant Knowles rejected his alibi and confused the time of the drug sale at issue. Dkt. # 1, pp. 28, 39; Dkt. # 24, p. 6.

Indeed, as plaintiff correctly contends, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see Wolff,* 418 U.S. at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

570–71; *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, inter alia, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

**\*5** It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there is *"some evidence* in the record" to support the findings of the hearing. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis added).

In this case, there is ample evidence to support defendant Knowles' guilty finding: defendant Noto's misbehavior report and his testimony that Meja originally identified plaintiff as the individual who sold him drugs; and the testimony of the confidential informant(s), which was considered outside the presence of plaintiff. Dkt. # 21, pp. 8–9.

Notably, plaintiff's only defense at the Tier III hearing was that he had been at an NOI/Black studies program at the time of the drug sale, which took place allegedly between 7:00–8:00 p.m. Dkt. # 21, p. 7. However, inmates Ford and Williams could not verify plaintiff's alibi defense. *Id.* Because plaintiff did not sign back into his cell area until 8:10 p.m., defendant Knowles determined that there was ample time for plaintiff to sell the drugs in the

yard during the period of his unexplained absence. Dkt. # 21, pp. 7, 16–18.

Plaintiff further contends that defendant Knowles violated his constitutional right to due process by failing to adhere to the state guidelines for conducting prison disciplinary hearings (set forth in Title 7 of the NYCRR §§ 253.1(b), 254.1 FN3) because, he alleges, that defendant Knowles conducted the Tier III hearing and was also involved in the investigation of plaintiff's drug sale. Dkt. # 24, p 6.

> FN3. 7 NYCRR § 253.1 gives superintendents the discretion to designate DOCS employees to conduct disciplinary hearings. Pursuant to § 253.1(b), "[n]o person who has participated in any investigation of the acts shall be a hearing officer at a hearing relating to those acts, nor shall any person who has prepared or caused to be prepared the misbehavior report on which a hearing is held, act as the hearing officer on that charge." Section § 254.1 of 7 NYCRR precludes a person who was a witness to or who investigated an incident that is the subject of a disciplinary proceeding from acting as a hearing officer relating to that incident.

This argument fails because violations of state law that do not deprive the plaintiff of a right "secured by the Constitution and laws" are insufficient to support a claim under § 1983. *See Baker v. McCollan,* 443 U.S. 137, 139–40, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir.2004); *Blouin v. Spitzer,* 356 F.3d 348, 362 (2d Cir.2004). State procedural protections do not give rise to substantive federal rights. *See Olim v. Wakinekona,* 461 U.S. 238, 249–50, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Holcomb v. Lykens,* 337 F.3d 217, 224 (2d Cir.2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures."). Moreover, "[s]tate procedures designed to protect substantive liberty interests entitled to pro-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

tection under the federal constitution do not themselves give rise to additional substantive liberty interests." *Blouin,* 356 F.3d at 363. It is "federal law, not state regulations, [that] determines the procedures necessary to protect that liberty interest ." *Id.* (citing *Watson v. City of New York,* 92 F.3d 31, 38 (2d Cir.1996)). Therefore, "the only relevant inquiry was whether the constitutional [procedures] were met, not whether state procedures were followed." *Shakur,* 391 F.3d at 119 (citing *Holcomb,* 337 F.3d at 224). As set forth above, plaintiff's constitutional rights were not violated during the Tier III hearing. Plaintiff's exclusive reliance on defendants' alleged violations of 7 NYCRR §§ 253.1(b) and 254.1 is insufficient to support his claim under § 1983. *See Shakur,* 391 F.3d at 119; *Holcomb,* 337 F.3d at 224; *Ramsey v. Goord,* 661 F.Supp.2d 370, 391–92 (W.D.N.Y.2009).

**\*6** Accordingly, since plaintiff received all of the process he was due in the course of the Tier III disciplinary hearing, defendants' motion for summary judgment on plaintiff's due process claim is granted.

**Retaliation Claim**

Plaintiff alleges that, in retaliation for attending a Nation of Islam ("NOI")/Black Studies course and/or for his affiliation therewith, defendant Noto filed a false misbehavior report and gave false testimony and that defendant Knowles found him guilty. Dkt. # 1, p. 43.

"In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for 'adverse action' taken against him by defendants." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *see also Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997)). Third, the plaintiff must establish a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citing *Dawes v. Walker,*

239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), superseded by 2003 U.S.App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)) (omission in the original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citing *Dawes,* 239 F.3d at 491). Accordingly, plaintiff must set forth nonconclusory allegations. *Id.* Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights are implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

**\*7** Here, even assuming plaintiff's affiliation

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)
**(Cite as: 2010 WL 3911414 (W.D.N.Y.))**

with the NOI/Black studies program was constitutionally protected conduct, he cannot show that his affiliation therewith was a substantial motivating factor for the filing of the misbehavior report and the subsequent finding of guilt concerning the report. Defendant Knowles declares that he "did not even recall plaintiff prior to the hearing he conducted," and had no involvement whatsoever in any NOI activities. Dkt. # 21, p. 22. Similarly, defendant Noto declares that he had no knowledge of plaintiff's participation in the NOI/Black Studies program, and, up until the time of the instant litigation, "did not know that plaintiff attended such a course or was a member of the NOI." Dkt. # 22, p. 6. To this extent, plaintiff cannot demonstrate that his affiliation with the NOI/Black studies program was a motivating factor in defendants' actions. Since plaintiff cannot establish any plausible connection between NOI/Black studies participation and the misbehavior report and the guilty finding, his retaliation claim fails as a matter of law.

Assuming, *arguendo,* that plaintiff could show that the disciplinary actions were motivated by retaliatory animus (an assumption that has no basis in the record before this Court), plaintiff's retaliation claims would fail because defendants can easily show that they would have taken the same disciplinary actions even in the absence of the protected conduct. *See Davidson v. Chestnut,* 193 F.3d at 149 ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."). The record shows that there was sufficient evidence, based on defendant Noto's investigation, to have charged plaintiff with a drug sale. Further, there was ample evidence at the Tier III disciplinary hearing for defendant Knowles to find plaintiff guilty of the drug sale charge. This is so particularly in the context of prison administration where courts must be cautious to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is granted.

### *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment is granted. Dkt. # 18. The Clerk of the Court is directed to enter judgment in favor of the defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*8 SO ORDERED.**

W.D.N.Y.,2010.
Allred v. Knowles
Not Reported in F.Supp.2d, 2010 WL 3911414 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:15-cv-01437-LEK-ML    Document 76    Filed 08/30/18    Page 42 of 94
Dillhunt v. Theriault, Not Reported in F.Supp.2d (2009)
2009 WL 4985477

2009 WL 4985477
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

William DILLHUNT, Plaintiff,

v.

Sgt. THERIAULT, Gouverneur Correctional Facility; Nancy Martin, Gouverneur Correctional Facility; Superintendent,[1] Gouverneur Correctional Facility; and Sgt. Perry, Gouverneur Correctional Facility, Defendants.

No. 9:07-CV-0412 (GTS/DEP).
|
Dec. 15, 2009.

**Attorneys and Law Firms**

William Dillhunt, St. Albans, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, James Seaman, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*MEMORANDUM DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* prisoner civil rights action, filed by William Dillhunt, ("Plaintiff") against four employees of the New York State Department of Correctional Services at Gouverneur Correctional Facility ("Defendants"), are (1) Defendants' motion for summary judgment (Dkt. No. 41), (2) United States Magistrate Judge David E. Peebles' Report-Recommendation recommending that Defendants' motion be granted in its entirety (Dkt. No. 51), and (3) Plaintiff's Objection to the Report-Recommendation. For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety, Defendants' motion is granted in its entirety, and Plaintiff's Amended Complaint is dismissed with prejudice in its entirety.

**I. RELEVANT BACKGROUND**

On May 23, 2007, Plaintiff filed his Amended Complaint in this action. (Dkt. No. 6.) Generally, liberally construed, Plaintiff's Amended Complaint asserts the following claims: (1) a First Amendment claim for retaliation arising from adverse action (allegedly) taken against him in response to his having filed a grievance; (2) a Fourth Amendment claim for the interception and monitoring of his mail; (3) a Fourteenth Amendment claim for the violation of his due process rights during a disciplinary hearing; (4) an Eighth Amendment claim for harassment; (5) a conspiracy claim; and (6) a state law claim for violation of a Department of Correctional Services ("DOCS") Directive. (*Id.*)

More specifically, Plaintiff alleges that (1) Defendant Perry retaliated against him for filing a grievance against another corrections officer, (2) Defendants unlawfully opened his mail and engaged in a campaign of harassment and conspiracy to coverup this violation, and (3) Defendant Martin violated his due process rights during the disciplinary hearing by relying on evidence unlawfully obtained through the seizure of his mail. (*Id.*)

On September 12, 2008, Defendants filed a motion for summary judgment seeking dismissal of all of Plaintiff's claims. (Dkt. No. 41.) In their motion, Defendants argue as follows: (1) Plaintiff has failed to establish a claim as to the unlawful mail search; (2) Plaintiff has failed to establish a retaliation claim; (3) Plaintiff's harassment claim is frivolous; (4) Plaintiff has failed to establish a malicious prosecution claim; (5) Plaintiff has failed to establish a due process claim; (6) Plaintiff has failed to establish a conspiracy claim; and (7) Defendants are entitled to qualified immunity. (*Id.*)

On December 4, 2008, after being granted an extension of time in which to do so, Plaintiff filed a response in opposition to Defendants' motion. (Dkt. No. 45.) In his response, Plaintiff argues that Defendants' motion should be denied because Plaintiff's due process rights were violated during the disciplinary hearing. More specifically, Plaintiff argues there was no mail watch authorization in place when his mail was seized, and therefore, the evidence used in the disciplinary hearing against him was unlawfully obtained.[2] (*Id.*)

2009 WL 4985477

**\*2** On December 11, 2008, Defendants submitted a reply to Plaintiff's response, discussing Plaintiff's claim that he requested proof of a mail watch authorization through several Freedom of Information Law ("FOIL") requests. (Dkt. No. 46.) Defendants argue that (1) Plaintiff's FOIL requests are not material to his federal constitutional claims because the FOIL requests only apply to state law causes of action, and (2) such state law causes of action were not raised by Plaintiff in his Amended Complaint. (*Id.* at Point I, ¶ 2.)

On August 31, 2009, Magistrate Judge Peebles issued a Report-Recommendation recommending that Defendants' motion be granted in its entirety and that the action be dismissed. (Dkt. No. 51.) Familiarity with the grounds of Magistrate Judge Peebles' Report-Recommendation is assumed in this Decision and Order.

On September 11, 2009, Plaintiff submitted a letter request for an extension of the deadline by which to file Objections to the Report-Recommendation, and was granted that extension (until November 11, 2009). (Dkt. No. 53.) On November 7, 2009, Plaintiff signed, and presumably mailed to the Court, his Objections to the Report-Recommendation. (Dkt. No. 54, at 2.) As a result, despite the fact that the Court did not receive those Objections until November 20, 2009, the Objections are deemed timely filed pursuant to the so-called "Prison Mailbox Rule."

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). [3] When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). [4] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-

CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B. Standard Governing a Motion for Summary Judgment

Magistrate Judge Peebles correctly recited the legal standard governing a motion for summary judgment, including a brief discussion on the adequacy of Plaintiff's response to Defendants' Statement of Material Facts pursuant to Local Rule 7.1(a)(3). (*See* Dkt. No. 51, pages 12-16.) As a result, that standard is incorporated by reference herein.

### III. ANALYSIS

**\*3** As an initial matter, even when construed with the utmost of liberality, Plaintiff's Objections fail to assert any specific challenge to Magistrate Judge Peebles' recommendations regarding any of Plaintiff's claims. Instead, Plaintiff's two-page Objections (1) rehash the facts giving rise to his claims, (2) reiterate why Defendants are liable under these facts, and (3) imply, for the first time, that the Court lacks subject matter jurisdiction over some or all of his claims. After carefully reviewing all of the papers herein, the Court can find no clear error in Magistrate Judge Peebles' Report-Recommendation. Magistrate Judge Peebles employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. The Court notes that Magistrate Judge Peebles' thorough and correct Report-Recommendation would survive even *de novo* review. For these reasons, the Court adopts Magistrate Judge Peebles' Report-Recommendation in its entirety, for the reasons stated therein.

The Court will only add three points with regard to Plaintiff's late-blossoming subject-matter jurisdiction argument. First, the Court has subject-matter jurisdiction over all of the claims asserted in Plaintiff's Amended Complaint-original jurisdiction over those claims arising under federal law, and supplemental jurisdiction over any claim arising under state law that is pendent to Plaintiff's federal claims. [5]

Dillhunt v. Theriault, Not Reported in F.Supp.2d (2009)

2009 WL 4985477

Second, the only "state law" claim that the Court can liberally construe in Plaintiff's Amended Complaint is (possibly) a claim for a violation of DOCS Directive No. 4422, which provides, in pertinent part, "Outgoing correspondence shall not be opened, inspected, or read without express written authorization from the facility Superintendent." (*See* Dkt. No. 6, ¶¶ 36, 52 & Ex. 1.)

Third, to the extent that Plaintiff seeks to have his state law claim dismissed *without prejudice* to refiling in state court, the Court grants that request as consistent with Magistrate Judge Peebles' Report-Recommendation.[6] *See Britton,* 2007 WL 625983, at *5 ("Nonetheless, because the Court has granted Defendants' motion for summary judgment with respect to Plaintiff's constitutional claim[s], it declines to exercise its jurisdiction over this state-law claim."). Pursuant to 28 U.S.C. § 1367(d), Plaintiff will have thirty days from the date of this Decision and Order in which to file a claim in state court alleging that Defendants violated DOCS Directive No. 4422.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles' Report-Recommendation (Dkt. No. 51) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 41) is *GRANTED* in its entirety; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is *DISMISSED* with prejudice, except for his claim alleging that Defendants violated DOCS' Directive No. 4422, which is dismissed *without prejudice;* and it is further

**\*4 ORDERED** that, pursuant to 28 U.S.C. § 1367(d), Plaintiff shall have **THIRTY (30) DAYS** from the date of this Decision and Order in which to file a claim in State Court alleging that Defendants violated DOCS' Directive No. 4422.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff William Dillhunt, a former New York State prison inmate who is proceeding *pro se* and *in forma*

*pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. In his amended complaint, plaintiff asserts that certain of his outgoing mail was opened unlawfully, and that prison officials at the facility in which he was incarcerated retaliated against and harassed him, violated his due process rights, and maliciously pursued disciplinary charges against him, resulting in his placement in disciplinary segregation. Plaintiff's amended complaint seeks both monetary damages and declaratory relief.

Currently pending before the court is defendants' motion for summary judgment dismissing plaintiff's claims against them. In their motion, defendants argue that their opening of plaintiff's mail was in furtherance of legitimate, penological concerns, and thus did not violate his constitutional rights, and that the record fails to support his claims of retaliation, harassment, malicious prosecution, and conspiracy. Defendants additionally contend that, in any event, they are shielded from suit under the doctrine of qualified immunity. For the reasons set forth below, I recommend that defendants' motion be granted, and plaintiff's amended complaint be dismissed in its entirety.

I. *BACKGROUND* [1]

Plaintiff is a former prison inmate who was, at the relevant times, entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"). *See generally* Amended Complaint (Dkt. No. 6). During most of the period relevant to his claims, plaintiff was designated to the Gouverneur Correctional Facility ("Gouverneur"), located in Gouverneur, New York. *Id.*

While defendants point to earlier events as having precipitated the disciplinary actions taken against Dillhunt, he maintains that the circumstances forming the basis for his claims were set in motion on February 17, 2006 when he tendered a handwritten complaint, later typed and resubmitted on February 21, 2006 as a formal grievance, complaining of the actions of a corrections officer who is not a party to the action occurring on February 14, 2006. Amended Complaint (Dkt. No. 6) ¶¶ 15-16 and Exhs. 2, 3. Plaintiff's complaint concerned an racial slur allegedly overheard by Dillhunt and directed toward him and two other minority inmates by the corrections officer. *See id.* During the course of an ensuing

investigation into the matter by Corrections Sergeant Perry, a defendant in the action, plaintiff was asked by Perry, in substance, whether he was certain that he desired to pursue the matter, and was told by Sergeant Perry "I don't think you know what you're doing," a statement interpreted by plaintiff as a threat of recrimination against him should he decide to pursue the grievance. [2] Seaman Aff. (Dkt. No. 41-2) Exh. A at 19.

**\*5** On February 26, 2006, the day after Sergeant Perry interviewed plaintiff, Dillhunt authored a letter addressed to his brother, Michael Dillhunt, requesting that his brother send $60 to a fellow inmate for legal services performed on his behalf by the other prisoner. Amended Complaint (Dkt. No. 6) ¶ 20 and Exh. 4. Plaintiff thereafter placed the letter, together with a separate letter from the fellow inmate, in an envelope addressed to his brother. Seaman Aff. (Dkt. No. 41-2), Exh. A at 36-38; *see also* Theriault Decl. (Dkt. No. 41-16) Exh. A at 1-3. Plaintiff mailed a second letter, addressed to his Aunt Emanuel, on or after March 6, 2006; that communication consisted of a typewritten letter from plaintiff's fellow inmate requesting that the recipient send $30 to the fellow inmate for legal services performed on plaintiff's behalf. Seaman Aff. (Dkt. No. 41-2) Exh. A and 39-40; Amended Complaint (Dkt. No. 6) ¶ 21; *see also* Theriault Decl. (Dkt. No. 41-16) Exh. A at 6.

The two letters were subsequently intercepted, and the three pieces of correspondence contained within them were read by prison officials sometime prior to March 18, 2006. Theriault Decl. (Dkt. No. 41-16) ¶ 4 and Exh. A. As will be seen, the basis for defendants' confiscation of plaintiff's outgoing mail is contested. Defendants maintain that interception of plaintiff's outgoing mail was authorized in writing on February 7, 2006 by Justin A. Taylor, the Superintendent at Gouverneur, pursuant to DOCS Directive No. 4422; according to defendants, the superintendent was asked to approve the interception of plaintiff's incoming and outgoing mail based upon confidential information allegedly provided to prison authorities that Dillhunt was selling drugs within the facility. Theriault Decl. (Dkt. No. 41-16) ¶ 2; Taylor Decl. (Dkt. No. 41-10) ¶ 6 and Exhs. B, C. Plaintiff, on the other hand-not without some evidentiary support-alleges that when his mail was intercepted no such written directive had been issued. [3], [4]

Following defendants' interception of the three communications at issue, defendant Theriault confronted plaintiff with copies of the letters as well as the envelopes addressed to his brother and aunt. Amended Complaint (Dkt. No. 6) ¶¶ 23-24. In response, plaintiff claimed that he did not remember sending the letters. *Id.* Exh. 6. On March 18, 2006 defendant Theriault issued a misbehavior report accusing plaintiff of soliciting services from another inmate (Disciplinary Rule 103.20), lying (Disciplinary Rule 107.20), and possessing or exchanging a document containing crime and sentence information (Disciplinary Rule 113.27). Amended Complaint (Dkt. No. 6) ¶ 25 and Exh. 6; *see also* Seaman Aff. (Dkt. No. 41-2) Exh. 1 at p. 40; Theriault Decl. (Dkt. No. 41-16) ¶¶ 6, 8 and 9.

A Tier III disciplinary hearing was convened on March 24, 2006 by Hearing Officer Nancy Martin to address the charges against Dillhunt . [5] Amended Complaint (Dkt. No. 6) ¶ 26; Seaman Aff. (Dkt. No. 41-2) Exh. 3. In anticipation of that hearing plaintiff was assigned an individual to assist him and was provided with copies of the subject letters. Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 1 and Exh. 15. At the hearing, which was continued on March 30, 2006, plaintiff appeared and was permitted the opportunity to cross-examine defendant Theriault and to offer evidence on his own behalf, including written and oral statements as well as the testimony of the fellow inmate in question. *See* Seaman Aff. (Dkt. No. 41-2) Exh. 3 at pp. 14-17.

**\*6** During the hearing plaintiff questioned whether an authorized mail watch existed at the time his mail was intercepted; the hearing officer conducted an investigation into the matter, but decided neither to confirm nor deny the existence of the mail watch, which remained in effect at the time of the hearing. Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 11-12. Instead, the hearing officer advised plaintiff that the mail watch bore no relevance to the issue presented at the hearing and that plaintiff could pursue any complaint regarding the mail watch through the inmate grievance process. *Id.*

At the close of the hearing, plaintiff confirmed on the record that he did not wish to call any additional witnesses or offer any further evidence, and also that he did not wish to voice any procedural objections regarding the conduct of the hearing. Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 17. The hearing officer then found plaintiff not guilty of soliciting or distributing another inmate's crime and

sentence information, but guilty of soliciting the services of another inmate and making false statements. *Id.* As a consequence of that determination plaintiff received a penalty of three months of disciplinary confinement in the facility's SHU and a corresponding loss of recreation, packages, commissary and telephone privileges was imposed. *Id.* The hearing officer's determination was affirmed by Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, on May 17, 2006. Amended Complaint (Dkt. No. 6) Exh. 8.

Following exhaustion of the DOCS internal review process, plaintiff commenced a state court proceeding under Article 78 of the New York Civil Practice Law and Rules ("CPLR") challenging the disciplinary determination and resulting punishment. *See* Amended Complaint (Dkt. No. 6) Exh. 9. Plaintiff's petition led to the issuance of a decision on March 19, 2007 by Acting Supreme Court Justice S. Peter Feldstein, vacating the disciplinary determination. *Id.* The court's reversal was based upon the respondent's failure to adduce any evidence that the superintendent at Gouverneur had authorized the interception of plaintiff's outgoing mail. *See id.*

On April 19, 2006, plaintiff filed an internal grievance asserting that defendants were not authorized to review his mail, but only issued a misbehavior report against him in retaliation for his complaint against a corrections officer. Amended Complaint (Dkt. No. 6) ¶ 11 and Exh. 1. Upon investigation, the Inmate Grievance Review Committee ("IGRC") at Gouverneur found no evidence of retaliation, noting that plaintiff was already on mail watch prior to his filing of the grievance against the officer. *Id.* That determination was ratified by the facility superintendent, and upheld on appeal to the CORC. *Id.*

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on April 17, 2007, Dkt. No. 1, later amending his complaint on May 23, 2007. Dkt. No. 6. Named as defendants in plaintiff's amended complaint are Robert Theriault, a corrections sergeant at Gouverneur; corrections sergeant Perry; Nancy Martin, a hearing officer at the prison; and the facility superintendent, now known to be Justin Taylor. *Id.* Plaintiff's amended complaint alleges violations of the First, Fourth and Fourteenth Amendments of the United States Constitution, asserting that 1) defendants not only unlawfully opened plaintiff's mail and violated

his rights, but also engaged in a campaign of harassment and a conspiracy to mask their violations; 2) defendant Perry threatened and retaliated against the plaintiff based upon his complaints regarding the conduct of a fellow corrections worker; and 3) defendant Martin violated his due process rights and maliciously prosecuted him during the disciplinary hearing despite her awareness that there was no prior written authorization permitting the interception of his mail. *Id.*

**\*7** Following joinder of issue and the completion of discovery, defendants moved for summary judgment dismissing plaintiff's complaint in its entirety. Dkt. No. 41. In their motion, defendants argue that 1) interception of an inmate's mail does not violate the First or Fourth Amendment when prison officials have reasonable cause to inspect it; 2) plaintiff's harassment claim lacks merit as a matter of law; 3) plaintiff's malicious prosecution claim against defendant Martin is legally deficient, since the mail watch was properly instituted and did not violate plaintiff's constitutional rights; 4) plaintiff failed to provide evidence that his due process rights were violated during his disciplinary hearing; 5) the evidence in the record is insufficient to prove a claim of retaliation; and 6) in any event, they are shielded from suit by the doctrine of qualified immunity. *Id.* On December 4, 2008 plaintiff filed papers in opposition to defendants' motion, Dkt. No. 45, and defendants have since submitted a brief reply memorandum, Dkt. No. 46.

Defendants' motion, now ripe for determination, was referred to me for a report and recommendation to the assigned district judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505,

2509-10, 91 L.Ed.2d 202 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*8** When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507-08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Plaintiff's Failure to Properly Respond to Defendants' Motion*

Before turning to the merits of plaintiff's claims, I will first address the threshold issue of the legal significance, if

any, of his failure to properly respond to defendants' Local Rule 7.1(a)(3) Statement, comprised of material facts as to which, they maintain, there is no genuine, triable issue, and specifically whether that failure requires that the court deem all facts not specifically controverted by Dillhunt to be true.

This court's rules provide that when responding to a properly filed summary judgment motion,

> [t]he opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs ... *The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.*

N.D.N.Y.L.R. 7.1(a)(3) (Emphasis in original). The seemingly compulsory tenor of this rule, mandating that facts not properly controverted be deemed admitted, is not absolute, and in this case is tempered by application of the principle that *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions as a backdrop. *See Jemzura v. Public Serv. Comm'n,* 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, C.J.)).; *Johnson v. Tedford,* 616 F.Supp.2d 321, 324-25 (N.D.N.Y.2007). It should also be noted that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local rules." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 109, n. 2 (2d Cir.2006) (quoting *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001)).

Plaintiff responded to defendants' summary judgment motion on December 4, 2008 (Dkt. No. 45), and seemingly attempted to include within his opposition a response to defendants' statement of material facts. Although plaintiff's paragraphs do not mirror those of defendants, it is fairly evident from his motion opposition and amended complaint what facts he contests. Based on the broad discretion afforded to the court, and in deference to his *pro se* status, I find that plaintiff's Local Rule 7.1(a)(3) response is adequate to show the existence of certain factual disputes, and therefore recommend that the facts

set forth in Defendants' Local Rule 7.1(a)(3) Statement not be deemed to have been admitted by the plaintiff for purposes of the instant motion. [6] *See Holtz,* 258 F.3d at 73; *Cruz v. Church,* No. 05-CV-1067 (GTS/DEP), 2008 WL 4891165, at *3-4 (N.D.N.Y. Nov.10, 2008) (Suddaby, J.).

### C. *Mail Censorship*

**\*9** At the heart of plaintiff's claims in this action is his contention that his outgoing mail was unlawfully censored. In their motion, defendants argue that plaintiff's constitutional rights were not abridged by the interception of his outgoing mail.

### 1. *First Amendment Protections*

Despite their circumstances, sentenced inmates do not shed all of the rights guaranteed to them under the constitution when passing through the prison gates. *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984). Analysis of whether, and if so to what extent, such individuals enjoy the benefits of constitutional protection in many instances is dependent upon the balancing of those rights against the legitimate, penological interests of prison officials, which are often in tension with those rights.

Among the protections enjoyed by prison inmates, though not unfettered, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment. *LeBron v. Swaitek,* No. 05-CV-172, 2007 WL 3254373, at *6 (N.D.N.Y.2007) (Sharpe, J.) (quoting *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003)). That right, however, gives way to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities, in which case no constitutional violation has occurred. *U.S. v. Workman,* 80 F.3d 688, 699 (2d Cir.1996), *cert. denied,* 519 U.S. 938, 117 S.Ct. 319, 136 L.Ed.2d 233 (1996).

Actions taken by prison administrators directed toward inmate mail are subject to the overarching consideration that a prison regulation infringing on an inmate's constitutional rights is valid so long as the regulation is "reasonably related to the legitimate penological interests." *Turner v. Safely,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Applying this precept, and for reasons which are obvious, "[c]ourts have

constitutionally afforded greater protection ... to outgoing mail than to incoming mail." *Davis,* 320 F.3d at 351 (citations omitted). Nonetheless, the Second Circuit has held that " 'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman,* 80 F.3d at 698 (quoting *Wolfish v. Levi,* 573 F.2d 118, 130 n. 27 (2d Cir.1978), *rev'd in part on other grounds sub nom., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

Plaintiff's constitutional challenge is limited to the scrutiny of his outgoing mail. Explaining the rationale for the interception, in a declaration submitted in support of defendants' motion, Sergeant Theriault states that at some point prior to February 2, 2006 he received confidential information that Dillhunt was selling illegal drugs at Gouverneur. Theriault Decl. (Dkt. No. 41-16) ¶ 2. Plaintiff challenges the fact that a formal, written mail intercept authorization from the superintendent at Gouverneur compliant with DOCS Directive No. 4422 was in place when his mail was seized and read, and has tendered evidence calling into question whether that is indeed true. Plaintiff has provided nothing in opposition to defendants' motion, however, to refute Theriault's claim that prior to plaintiff's grievance and Sergeant Perry's veiled threat he had received confidential information regarding Dillhunt's sale of drugs at the facility. The receipt of information regarding ongoing criminal activity, which is not disputed, provided a legitimate penological basis for intercepting plaintiff's mail and thus establishes good cause for the monitoring of plaintiff's mail. *See Knight v. Keane,* 247 F.Supp.2d 397, 393-94 (S.D.N.Y.2002). Accordingly plaintiff's rights under the First Amendment were not infringed. *See Workman,* 80 F.3d at 698 (citations omitted).

### 2. *Fourth Amendment Protections*

**\*10** In addition to arguing that interception of his outgoing mail violated his rights under the First Amendment, Dillhunt also alleges that a Fourth Amendment deprivation resulted from that action.

In *Hudson,* the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." 468 U.S. at 526, 104 S.Ct. 3194, 82 L.Ed.2d 393. In concurring with the majority opinion authored by Chief Justice Burger in Hudson, Justice O'Connor succinctly pronounced: "The fact of arrest and incarceration abates

all legitimate Fourth Amendment privacy and possessory interests in personal effects ....“ *Id .* at 538, 104 S.Ct. at 3206.

Even if one were to assume that as a prison inmate plaintiff enjoyed Fourth Amendment protection from unreasonable searches and seizures of his outgoing mail, such a right would be far from absolute, and instead once again would yield to legitimate penological interests. *See Workman,* 80 F.3d 699. It is well recognized that courts should give considerable deference “to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.” *Rodriguez v. Ames,* 224 F.Supp.2d 555, 564 (W.D.N.Y.2002) (quoting *Thornburgh v. Abbott,* 490 U.S. 401, 407-08, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989)). In determining whether a restriction is constitutionally permissible, the court must consider

> 1) whether there is a rational connection between the restriction and the legitimate governmental interest used to justify it; 2) whether alternative avenues of exercising the right remain open to the inmate; 3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and 4) whether obvious, easy alternatives to the restriction exist.

*Purnell v. Lord,* 952 F.2d 679, 683 (2d Cir.1992) (quoting *Turner,* 482 U.S. at 89-90, 107 S.Ct. at 2261-62).

It goes without saying that “[t]he investigation and prevention of ongoing illegal inmate activity constitute legitimate penological objectives.” *Workman,* 80 F.3d at 699 (citing *Thornburgh,* 490 U.S. at 411-12, 109 S.Ct. at 1880) (noting that “[d]angerous outgoing correspondence” in a prison context posing a “serious threat to prison order and security” includes “plans relating to ongoing criminal activity”). “Furthermore, ‘the absence of ready alternatives is evidence of the reasonableness' of the prison's practice.” *Workman,* 80 F.3d at 699 (citations omitted). The Second Circuit has recognized, under circumstances similar to those at bar, that there is “no easily implemented alternative practice” to a mail watch available to both accommodate the

legitimate interests of prison administrators and further protect the inmate's constitutional interests. *Id.*

Having produced undisputed evidence that the interception of plaintiff's mail was instituted because he was suspected of selling illegal drugs, defendants have established that their monitoring of his outgoing mail was reasonably related to preventing ongoing criminal activity. Accordingly, since the surveillance of plaintiff's outgoing mail was instituted upon reasonable suspicion, that search and resulting seizure would also pass muster under the Fourth Amendment. *Id.*

### 3. *Violation of State Law*

**\*11** In addition to setting forth constitutional claims, plaintiff's complaint advances a cause of action resting upon violation of DOCS Directive No. 4422, the functional equivalent of a state agency policy, arguing that the directive was contravened because the mail watch was not authorized in advance in accordance with that policy.[7] To the extent that plaintiff attempts to state a claim under 42 U.S.C. § 1983 for the alleged violation of that directive, such a claim fails as a matter of law.

To state a valid claim under that provision, “plaintiff must allege that 1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and 2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.” *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)). “A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983.” *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009) (Suddaby, J.) (collecting cases). “Furthermore, the violation of a DOCS Directive, alone, is not even a violation of a New York State Law or regulation (much less of 42 U.S.C. § 1983).” *Cabassa v. Gummerson,* 01-CV-1039, 2008 WL 4416411, at \*6 n. 24 (N.D.N.Y. Sept.24, 2008) (Hurd, J.) (internal quotation marks and citation omitted). This is so because the DOCS directives merely provide a system which the DOCS Commissioner has established to assist him in exercising his discretion, which he retains despite any violation of those directives. *Id.*

Undeniably, as has been noted, the parties dispute whether defendants complied with the dictates of DOCS

Directive No. 4422 in connection with the seizure of plaintiff's mail. That dispute, however, is not material since it does not undermine Sergeant Theriault's assertion that when plaintiff's mail was intercepted, prison officials had a legitimate basis to suspect him of selling illegal drugs within the facility. In support of his position, plaintiff relies upon the state court decision vacating the penalty imposed upon him after the disciplinary proceeding, which was based upon "the absence of any indication in the record that the Superintendent of the Gouverneur Correctional Facility had authorized the opening, inspection and/or reading of [plaintiff's] outgoing mail...." Amended Complaint (Dkt. No. 6) Exh. 9. Even crediting that court's implicit finding that defendants opened plaintiff's mail in violation of DOCS Directive 4422, that violation alone is insufficient to establish a claim under § 1983. *Cabassa*, 2008 WL 4416411, at *6 n. 24; *see also Workman*, 80 F.3d at 699 (holding that evidence should not be suppressed simply because a supervising official failed to properly fill out the mail surveillance form); *Knight*, 247 F.Supp.2d at 394 n. 5 (when a regulation affords more protection to an inmate than the Constitution requires, "plaintiff's First Amendment right to receive and send mail would not have been violated by defendants' failure to obtain the proper authorization before seizing plaintiff's letter"); *Dagnone v. Phillips*, No. 03 Civ. 0903, 2006 U.S. Dist. LEXIS 84739, at *20 (S.D.N.Y. June 12, 2006) (Fox, M .J.) (failing to comply with prison regulations is not a violation of federal due process rights).

**\*12** Accordingly, and for all of the foregoing reasons, I recommend that that portion of defendants' motion seeking dismissal of plaintiff's claims relating to confiscation of his outgoing mail be granted.

### D. *Retaliation*

In his complaint, Dillhunt also alleges that his constitutional rights under the First Amendment were violated when, after he pursued a grievance regarding a corrections officer's alleged racial slur, despite Sergeant Perry's veiled threats of recrimination, his mail was intercepted and disciplinary charges were lodged against him. Noting the ease with which such claims can be incanted by a prison inmate, defendants seek dismissal of this cause of action as legally deficient as a matter of law.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a

right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir.1988). As the Second Circuit has repeatedly cautioned, however, such claims are easily recited and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001) *overruled on other grounds, sub. nom Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)); *Davis*, 320 F.3d at 352.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a substantial or motivating factor in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.2007); *Dawes*, 239 F.3d at 492. If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

It is well recognized that the filing of a grievance is protected conduct, and can thus satisfy the first prong of a retaliation claim. *Graham*, 89 F.3d at 80. Plaintiff has therefore sufficiently alleged that he engaged in constitutionally protected conduct. Additionally, after the filing of his grievance plaintiff was undeniably subjected to disciplinary action, and has therefore also established the adverse action element of his retaliation claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir.2004).

**\*13** Plaintiff's claim falls, however, on his failure to allege any facts sufficient to show that the filing of the

racial grievance against a corrections officer, who is not a named defendant in the action, was in any way related to the opening of his mail and subsequent issuance of a misbehavior report by other DOCS employees. Plaintiff has alleged no fact which would even suggest that the officer against whom plaintiff's grievance was directed was in any way related to the mail watch, or the series of events that transpired after plaintiff's mail was opened. To the contrary, defendants have established, without contradiction from the plaintiff, that Sergeant Theriault initiated the procedure leading to the mail watch based upon a suspicion of illegal activity, and plaintiff has produced no evidence that connects Theriault to Hill. Moreover, the record is barren of any evidence from which a reasonable factfinder could conclude that plaintiff's racial slur grievance was a substantial or motivating factor in either the decision to institute the mail watch, or the resulting disciplinary charges.

Even if it could be said that plaintiff's amended complaint and the evidence now before the court established a *prima facie* case of retaliation, defendants have convincingly established that they would have taken the same action against plaintiff even absent the alleged impropriety. As was previously noted, the undisputed facts establish that defendants possessed the requisite suspicion to implement a watch of plaintiff's mail, based upon information that he was selling illegal drugs. The record establishes as well that the disciplinary charges and proceedings would have been pursued, notwithstanding plaintiff's grievance, since a review of plaintiff's outgoing mail revealed that Dillhunt was violating prison rules, and the resulting disciplinary sanctions were imposed based upon his admissions at the disciplinary hearing to conduct establishing his guilt for two of the three violations charged.

In view of these facts, I conclude that plaintiff has not shown a cognizable retaliation claim.

### E. *Harassment*

Plaintiff's complaint also generally asserts that he was harassed by defendants, although few specifics are cited. Noting that harassment of inmates by prison officials rarely rises to a level of constitutional significance, defendants also seek dismissal of this potential cause of action.

Liberally construed, plaintiff's allegations of harassment are, at best, an attempt to state a violation of his Eighth Amendment right to be free from cruel and unusual punishment. His complaint, however, fails to allege any conduct that would warrant Eighth Amendment protection. As a general matter, verbal harassment, including profanity, without any physical injury is not a cognizable claim under section 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Nor do threats amount to a constitutional violation. *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995).

**\*14** In his amended complaint, plaintiff alleges nothing more than having been subjected to vague threats and, apparently, that the mail watch and disciplinary proceeding itself were harassing; he does not claim the infliction of any physical injury or pain as a result of defendants' harassing conduct. Plaintiff has therefore failed to meet the threshold requirement for an Eighth Amendment violation of showing the "unnecessary and wanton infliction of pain" by prison officials. *Whitley v. Albers,* 475 U.S. 312, 319, 196 S.Ct. 1078, 1084, 89 L.Ed.2d 251, ---- (1986). Consequently, I find plaintiff has failed to establish any facts that would support an Eighth Amendment violation.

### F. *Due Process/Malicious Prosecution Claims*

Another component of plaintiff's complaint focuses upon his contention that his right to procedural due process was violated in connection with his disciplinary hearing. In their motion, defendants assert that plaintiff received the constitutionally mandated process that he was due during the course of the disciplinary proceedings against him.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996). In their motion defendants do not contest plaintiff's assertion that by virtue of the disciplinary proceedings against him he was deprived of a cognizable liberty interest.[8] They do, however, challenge plaintiff's contention that he was denied due process during the course of the disciplinary proceedings.

The procedural protections to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are both modest and well-established, the contours of the required protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 563-67, 94 S.Ct. 2963, 2978-80, 41 L.Ed.2d 935 (1974). Under *Wolff,* the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564-70, 94 S.Ct. at 2978-83.

The record establishes that plaintiff received a copy of the misbehavior report setting forth the charges against him in advance of the hearing. Amended Complaint (Dkt. No. 6) Exh. 6. A disciplinary hearing was conducted on two separate days, and was recorded. *See generally* Seaman Aff. (Dkt. No. 41-2) Exh. 3. Plaintiff was assisted in preparing for the disciplinary hearing, and before the hearing commenced he also received copies of the letters confiscated during the mail watch that formed the basis for the disciplinary charges. *Id.* at 1. At the hearing, plaintiff was permitted to give an oral and written statement, question Theriault, and offer his own evidence and witnesses.[9] *See generally id.* At the close of the hearing, when asked if he had any objections to the procedure followed, plaintiff answered that he did not. *Id.* at 16. In addition, after the hearing officer made her determination on the record, plaintiff was provided a copy of the disposition. Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 17.

**\*15** The due process clause of the Fourteenth Amendment also requires that a hearing officer's determination be supported by some evidence .[10] *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The hearing officer's finding of guilt on two of the charges was based upon admissions made by plaintiff during the hearing, contradicting his earlier statement to Theriault that he did not recall the letters, that he had written the letters to his brother and aunt and that he was giving Inmate Muniz money to provide him the service of purchasing goods at the commissary. The hearing officer's determination

was therefore supported by some evidence, thereby meeting the minimum requirements of the Fourteenth Amendment.

The primary basis for plaintiff's due process challenge is his assertion that defendant Martin impermissibly relied upon evidence obtained through what he terms the "illegal censorship" of his outgoing mail in determining his guilt. In this regard, invoking the "fruit of the poisonous tree" doctrine, plaintiff asserts that after defendant Martin became aware that no authorization existed relating to the opening of Dillhunt's outgoing mail, she should have dismissed the misbehavior report instead of continuing to maliciously prosecute him and ultimately sentencing him to ninety days in SHU confinement.

"The fruit of the poisonous tree doctrine excludes evidence obtained from or as a consequence of lawless official acts." *Townes v. City of New York,* 176 F.3d 138, 145 (2d Cir.1999) (quoting *Costello v. United States,* 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961)). This doctrine, which applies to evidence that is obtained during a criminal investigation, however, has no applicability to prison disciplinary hearings. *Rabb v. McMaher,* No. 94-CV-614, 1998 WL 214425, at *7 (N.D.N.Y. Apr.24, 1998) (Pooler, J.).

It should be noted, moreover, as discussed above, that a violation of DOCS Directive No. 4422 alone does not support plaintiff's contention that the evidence obtained from the mail watch and used at the disciplinary proceeding was illegally begotten, in violation of his Fourth Amendment rights. Indeed, addressing similar facts in the context of a criminal proceeding, another court within this circuit expressly rejected a claim that evidence obtained in violation of violation of the DOCS Directive No. 4422 must be suppressed. *United States v. Green,* No. 92-CR-159C, 1994 WL 178139, at *5 (W.D.N.Y. Feb.10, 1994) (Curtin, J.). In *Green,* the defendant moved to suppress evidence obtained through a mail watch on the ground that the superintendent at the correctional facility involved had failed to include all of the required information on the authorization form necessary to institute the mail watch. *See Green,* 1994 WL 178139, at *5. Rejecting the defendant's contention, the court found that even though the state had violated its own regulations no constitutional violation occurred to warrant suppression of the evidence. *Id.* In doing so, the court reasoned that prisoners do not have a legitimate

2009 WL 4985477

expectation of privacy in the their mail and furthermore, "a prisoner's right to privacy ... should 'always yield to what must be considered the paramount interest in institutional security.' " *Id.* (quoting *Hudson,* 468 U.S. at 524, 104 S.Ct. at 3201). Because the inmate in that case failed to demonstrate that his interest in mail privacy outweighed the prison's interest in maintaining security, the court found no Fourth Amendment violation had occurred. *Green,* 1994 WL 178139, at *6. Similarly, in this case the violation of the DOCS Direction No. 4422, if any, did not require suppression of the evidence at the Tier III hearing, and cannot support plaintiff's due process or malicious prosecution claims.

**\*16** In addition to arguing that his rights were abridged by the hearing officer's receipt into evidence of the disputed correspondence, plaintiff asserts that he was subjected to malicious prosecution by defendant Martin because she conducted the disciplinary hearing against him despite awareness that the evidence against him was tainted. Such a claim in this setting is analyzed under the Fourteenth Amendment. *See Wolff,* 418 U.S. at 553-54, 94 S.Ct. at 2973. Where a prisoner's period of incarceration is not impacted by disciplinary proceedings, however, that inmate has no claim for malicious prosecution under *section 1983. Parker v. City of New York,* No. 05 Civ. 1803, 2008 WL 110904, at * 9 (S.D.N.Y. Jan. 7, 2008) (citing cases). In this instance plaintiff, who was incarcerated at the time, received a sentence of ninety-days in SHU confinement, a penalty which was later expunged from his record, and plaintiff has not alleged that the Tier II I hearing or the resulting sanctions in any way affected his period of incarceration.

In view of the foregoing, I have concluded that plaintiff has stated neither a due process violation nor a claim for malicious prosecution, and therefore recommend that defendants' motion as to these claims be granted.

### G. *Conspiracy*

Although none of his five separately numbered causes of action is denominated as such, when liberally construed plaintiff's allegations to the effect that defendants engaged in a "campaign of harassment" against him, could be viewed as an attempt on his part to assert a claim of conspiracy. *See e.g.,* Amended Complaint (Dkt. No. 6) ¶¶ 40, 46. To the extent that such a cause of action is asserted, defendants argue that it is subject to dismissal as a matter of law.

To sustain a conspiracy claim under § *42 U.S.C.1983,* a plaintiff must demonstrate that a defendant "acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh,* 901 F.Supp. at 763 (citations and internal quotation marks omitted). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under *section 1983.* [11] *Id.; see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983). Moreover, in order to support a claim of conspiracy to commit a civil rights violation, a plaintiff must establish the existence of such a deprivation; a claim of conspiracy, standing alone, is insufficient to support a finding of liability under *section 1983. Britt v. Garcia,* 457 F.3d 264, 269-70 (2d Cir.2006); *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993) (collecting cases); *Malsh,* 901 F.Supp. at 763.

In addition to challenging the sufficiency of plaintiff's conspiracy allegations, defendants argue that it is precluded by the intra-agency conspiracy doctrine. In a doctrine rooted in the conspiracy provision of section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which, although developed in the context of business entities, since inception has been expanded to apply to business corporations and public entities as well, the intra-corporate conspiracy doctrine provides that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances. *See, e.g., Everson v. New York City Transit Auth.,* 216 F.Supp.2d 71, 75-76 (E.D.N.Y.2002); *Griffin-Nolan v. Providence Washington Ins. Co.,* No. 504CV1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.).

**\*17** In this instance plaintiff alleges that defendants conspired to illegally open and read his mail and then attempt to cover up the violation and to have him placed in SHU disciplinary confinement. Preliminarily, plaintiff's allegations of conspiracy are wholly conclusory, and plaintiff has come forward with no evidence that would even remotely suggest the existence of a conspiracy to violate his constitutional rights. Moreover, plaintiff has failed to establish a constitutional violation, a predicate to a *section 1983* conspiracy claim. Notwithstanding

these fatal deficiencies, even if plaintiff had pleaded a viable conspiracy claim, it would have been precluded by the intra-agency conspiracy doctrine since it is asserted only against employees of the DOCS, each acting within the scope of his or her employment. *Little v. City of New York,* 487 F.Supp.2d 426, 441-42 (S.D.N.Y.2007) (citations omitted). Accordingly, I also recommend that defendants' motion be granted as to plaintiff's conspiracy claims.

### IV. *SUMMARY AND RECOMMENDATION*
Plaintiff's amended complaint alleges that defendants retaliated against him for filing a grievance, engaged in a conspiracy to intercept and monitor his mail unlawfully and to harass him, violated his due process rights during a disciplinary hearing, and maliciously pursued disciplinary charges against him. The record, however, fails to substantiate any of these claims. Accordingly, I recommend dismissal of plaintiff's complaint in its entirety and find it unnecessary to address defendants' additional argument that they are entitled to qualified immunity from suit.

Based upon the foregoing, it is hereby respectfully,

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 41) be GRANTED, and that plaintiff's amended complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d) and 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 4985477

---

Footnotes

1    The Superintendent has been identified as Justin A. Taylor. (*See* Dkt. No. 51 at 10 [Report-Recommendation].)

2    Plaintiff was charged with soliciting services from another inmate (Disciplinary Rule 103.20), lying (Disciplinary Rule 107.20), and possessing or exchanging a document containing crime and sentence information (Disciplinary Rule 113.27). (*See* Dkt. No. 51 at 6-9.) Plaintiff was found guilty of the first two charges and received 90 days confinement in SHU. (*Id.*)

3    On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

4    *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

5    Mor specifically, the Court finds that it has supplemental jurisdiction over any state-law claim asserted in Plaintiff's Amended Complaint, because (1) that state-law claim arises from the same controversy as does Plaintiff's First and Fourteenth Amendment claims, over which this Court has original jurisdiction, and (2) Plaintiff consented to the Court's jurisdiction over all of his claims when he asserted them in his Amended Complaint. *Turley v. Britton,* 03-CV-1425, 2007 WL 625983, at *5 (N.D.N.Y. Feb.24, 2007) (Scullin, J.) ("The gravamen of Plaintiff's first cause of action is that, irrespective of whether Defendants violated his First Amendment rights, as he alleges in his second cause of action, they violated DOCS' Directive 4421 by refusing to consider his outgoing correspondence to the DMV as privileged and, thus, affording it the weekly free postage allowance. This claim is clearly based upon state-law and arises from the same controversy as

2009 WL 4985477

his second cause of action, over which this Court has original jurisdiction; therefore, the Court may exercise supplemental jurisdiction over this claim.").

6 As Magistrate Judge Peebles stated in his Report-Recommendation, "[t]o the extent that [P]laintiff attempts to state a claim under 42 U.S.C. § 1983 for the alleged violation of [a DOCS] directive, such a claim fails as a matter of law." (Dkt. No. 51, at 22.)

1 In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003). It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by defendants.

2 Plaintiff's grievance regarding the corrections officer's alleged racial slur was denied at the facility level on March 9, 2006, Seaman Aff. (Dkt. No. 41-2) Exh. 2 at 22, and that denial was upheld on appeal to the CORC on April 5, 2006. *See* Amended Complaint (Dkt. No. 6) Exh. 3. It appears from the superintendent's decision denying the grievance that plaintiff was issued a misbehavior report based upon the events of February 14, 2006. *See* Amended Complaint (Dkt. No. 6) Exh. 3. Neither plaintiff nor defendants have submitted any further information regarding the basis for, or ultimate disposition of, that misbehavior report.

3 Plaintiff made a number of requests pursuant to New York's Freedom of Information Law ("FOIL"), N.Y. Public Officers Law Art. 6, for copies of documents authorizing the mail watch, yielding responses indicating that no such documents existed. Amended Complaint (Dkt. No. 6) Exh. 9; Dillhunt Aff. (Dkt. No. 45) Exh. 4. In response to FOIL request made by plaintiff while at Gouverneur requesting "[a]ny written authorized to opened or read my outgoing mail," for example, Senior Counselor R. Stiles responded on May 2, 2006 that no such record exists. Amended Complaint (Dkt. No. 6), Exh. 9. A later memorandum, dated October 13, 2006, to plaintiff from the FOIL officer at Cape Vincent Correctional Facility (where plaintiff had been transferred) advised that plaintiff's request was denied because "releasing the document if it exists would interfere with law enforcement investigations or judicial proceedings." Dillhunt. Aff. (Dkt. No. 45) Exh. 4. Plaintiff apparently appealed that denial. In April of 2007, while at Cape Vincent, plaintiff submitted another FOIL request relating to any authorization to read or open his mail, and was told again that no such record existed at that facility. Amended Complaint (Dkt. No. 6), Exh. 9. In what appears to be a response to the earlier appeal by plaintiff of the FOIL denials, plaintiff was advised on May 24, 2007 by Anthony J. Annucci, Esq., Deputy Commissioner and Counsel to the DOCS, that the mail watch authorization sought by the plaintiff did not exist. Dillhunt Aff. (Dkt. No. 45) Exh. 5. For reasons later discussed, while the New York State Supreme Court, in a decision vacating plaintiff's disciplinary penalty, obviously found the question of whether there had been compliance with DOCS Directive No. 4422 important for purposes of the disciplinary disposition under consideration, the dispute over whether such compliance occurred is not material for purposes of defendants' motion. *See* pp. 22-24, *post.*

4 Superintendent Taylor's authorization to intercept of plaintiff's incoming and outgoing mail was terminated on April 7, 2006. *See* Taylor Decl. (Dkt. No. 41-14) Exh. D.

5 The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in a Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998).

6 Although defendants have responded to plaintiff's opposition papers, in their reply defendants do not urge the court to invoke Local Rule 7.1(a)(3) and accordingly treat defendants' undisputed facts as having been admitted by Dillhunt.

7 DOCS Directive No. 4422 provides, in relevant part, that "[o]utgoing correspondence shall not be opened, inspected, or read without express written authorization from the facility Superintendent." 7 N.Y.C.R.R. § 720.3(e).

8 The Second Circuit has interpreted the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), to mean that "a prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sealey v. Giltner,* 197 F.3d 578, 583 (2d Cir.1999) (quoting *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293, 132 L.Ed.2d 418). There is an argument to be made that because plaintiff was sentenced to only ninety days of disciplinary confinement, he cannot establish the deprivation of liberty interest sufficient to trigger the Fourteenth Amendment's procedural due process requirements. *See Colon v. Howard,* 215 F.3d 227 (2d Cir.2000); *see also Bunting v. Nagy,* 452 F.Supp.2d 447, 456 (S.D.N.Y.2006). I note, however, that in his complaint plaintiff alleges that while in SHU segregation he was "subjected to the daily yelling and screaming of the two hundred prisoners housed in SHU, in a small enclosed structure", causing him to experience migraine headaches.

2009 WL 4985477

Amended Complaint (Dkt. No. 6) ¶ 47. This allegation could suffice to require factfinding by the court before making a determination of whether a constitutionally cognizable liberty interest is at play. *See Davis v. Barrett,* 576 F.3d 129 2009 WL 2411811(2d Cir. Aug.7, 2009).

**9**   Plaintiff contends that he was denied due process at the disciplinary hearing when limited by the hearing officer in his cross-examination of Sergeant Theriault, arguing that defendant Martin would stop the tape recording and threaten to remove Dillhunt from the hearing if he continued to ask questions relating to the authorization to monitor his mail. Amended Complaint (Dkt. No. 6) ¶ 28, 44. The hearing transcript does not support this contention. Morever, the hearing transcript reveals that when asked if he had any further questions of Theriault, plaintiff stated that he did not. Dkt. No. 41-5 at p. 15. In any event, even if plaintiff was not afforded a full opportunity to question defendant Theriault, that witness was called by the hearing officer, and there is no constitutional requirement that plaintiff be afforded an opportunity for unfettered cross-examination of adverse witnesses in disciplinary cases. *See Wolff,* 418 U.S. at 567-68, 94 S.Ct. at 2980.

**10**   The "some evidence" standard under *Hill* has been described as considerably tolerant. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). To be sure, the Fourteenth Amendment requires that at least some "reliable evidence" be contained in the record supporting the hearing officer's determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (*quoting, inter alia, Luna v. Pico,* 356 F.3d 356, 490 (2d Cir.2004)). Based upon the court's review of the hearing transcript, and in particular plaintiff's admissions during the hearing, I conclude that no reasonable factfinder could determine that the hearing officer's conclusion was not based upon "some evidence".

**11**   Defendants address plaintiff's conspiracy claim as if asserted under 42 U.S.C. § 1985(3). Plaintiff's amended complaint, however, refers only to section 1983. Under either provision, however, his conspiracy claim fails for the reasons set forth below.

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 214425
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Reginald RABB, Plaintiff,

v.

Lt. McMAHER, Corrections Lieutenant at
Auburn Correctional Facility; Thomas A.
Coughlin, Commissioner of New York State
Department of Correctional Services; Donald Selsky,
Director of Special Housing Units; individually
and in their official capacities, Defendants.

No. 94–CV–614 (RSP/GJD).
|
April 24, 1998.

#### Attorneys and Law Firms

Reginald Rabb, Brooklyn, New York, plaintiff pro se.

Dennis C. Vacco, New York State Attorney General,
Albany, NY, Anthony B. Quartararo, Assistant Attorney
General, of counsel.

### MEMORANDUM–DECISION AND ORDER

POOLER, J.

**\*1** Plaintiff Reginald Rabb objects to Magistrate Judge
Gary L. Sharpe's recommendation that I deny Rabb's
motion for summary judgment, dkt. no. 48, and grant
defendants' cross-motion for the same relief, dkt. no. 62,
because Rabb failed to show that he was denied any
procedural protections to which he was entitled. Because I
find that there may be issues of fact concerning the process
that Rabb received, I conclude that these motions should
be recommitted to Magistrate Judge Sharpe.

### BACKGROUND

The factual background of this lawsuit previously has
been described in both my prior memorandum-decision
and order of April 7, 1997 (the "April 7 order"), dkt. no.
57, and the magistrate judge's report-recommendation,
dkt. no. 70. Therefore, I will not repeat the facts except

as necessary to understanding the issues presented by
plaintiff's objections.

Alleging that he was denied due process in a prison
disciplinary hearing, Rabb sued Thomas A. Coughlin,
the commissioner of the New York State Department of
Corrections; Donald Selsky, director of special housing
units; and Lieutenant Maher (sued as Lt. McMaher),
who acted as the hearing officer for Rabb's Tier III
disciplinary hearing. On March 27, 1996, defendants
moved for summary judgment. Dkt. No. 36. On October
15, 1996—long after the time for filing a cross-motion
had passed—Rabb cross-moved for summary judgment,
emphasizing that he had conclusively established that
defendants violated his right to due process. Dkt. Nos. 48–
50. In the April 7 order, I found that Rabb adequately
supported the existence of a liberty interest and therefore
denied defendants' motion. Dkt. No. 57 at 5–6. I declined
to consider plaintiff's untimely cross-motion but referred
it to Magistrate Judge Gustave J. Di Bianco for further
consideration. *Id.* at 4.

On April 29, 1997, defendants wrote to Magistrate Judge
Gustave J. Di Bianco, stating that I had overlooked
certain aspects of their summary judgment motion
and requesting permission renew it. Dkt. No. 58. The
magistrate judge granted defendants' request, allowing
them to file a cross-motion for summary judgment. Dkt.
No. 59. On May 8, 1997, plaintiff filed timely objections
to the magistrate judge's order. Dkt.No.61. For reasons
that are not apparent from the record, the Office of
the Clerk did not forward these objections to me for
consideration. Defendants duly filed their cross-motion
for summary judgment on June 12, 1997. Dkt. No. 62.
Defendants argued: (1) plaintiff was not deprived of a
liberty interest; (2) plaintiff failed to allege Coughlin's
personal involvement; and (3) defendants are entitled to
dismissal based on qualified immunity. Dkt. No. 63. Rabb
opposed defendants' cross-motion but conceded that his
claim against defendant Coughlin should be dismissed.
Dkt. No. 67 at 18.

On November 24, 1997, this case was transferred to
Magistrate Judge Gary L. Sharpe, dkt. no. 69, who
issued his report-recommendation on March 5, 1998, dkt.
no. 70. Magistrate Judge Sharpe found that (1) because
Mahar appropriately explained his refusal to call certain
witnesses that Rabb requested and to produce certain
documentary evidence, the refusals did not deny Rabb due

Rabb v. McMaher, Not Reported in F.Supp. (1998)

Case 9:15-cv-01437-LEK-ML   Document 76   Filed 08/30/18   Page 58 of 94

1998 WL 214425

process, dkt. no. 70 at 8, and (2) plaintiff failed to allege Coughlin's personal involvement and failed to identify any constitutional violation committed by defendant Selsky, *id* at 9. Because the magistrate judge found no due process violations, he did not address the defendants' remaining claims. Rabb filed objections on March 19, 1998. Rabb argues that (1) he should have been allowed to call inmate Brunse Smith as a witness because Smith would have testified that the inmate Rabb allegedly stabbed was actually stabbed earlier by another inmte; (2) he should have been allowed to call nurse Bonnie Swim as a witness because Swim could have testified that Rabb's alleged victim's wounds occurred in the prior altercation and that Rabb himself had only been struck once by a baton rather than several times as stated in the misbehavior report lodged against Rabb; (3) the hearing officer's refusal to allow Rabb to view photographs of his alleged victim's wounds denied Rabb due process because he could have established that the wounds were stale and had not been inflicted by Rabb; (4) the magistrate judge erred by failing to rule on plaintiff's claim that Mahar denied him due process by refusing to produce an alleged investigative report by one Sergeant Shea; and (5) the magistrate judge erred by failing to rule on Rabb's allegation that he did not have a fair and impartial hearing officer. Dkt. No. 71.

### DISCUSSION

**1. Objections to Magistrate Judge Di Bianco's April 29,1997, Order**

**\*2** I consider first plaintiff's objections to Magistrate Judge Di Bianco's order permitting the defendants to file a renewed summary judgment motion because if these objections are valid, I cannot consider Magistrate Judge Sharpe's report-recommendation. The April 29, 1997, order is non-dispositive. Therefore, I can modify it only if it is clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). The magistrate judge acted within his discretion in allowing a second summary judgment motion, and, considering the pendency of plaintiff's summary judgment motion, the decision to allow defendants to file a renewed motion was not an abuse of discretion. Therefore, I deny plaintiff's objections and refuse to modify the April 29, 1997, order.

**II. Objections to the March 5, 1998, Report–Recommendation**

I conclude for two reasons that these motions should be recommitted to the magistrate judge. First, after the magistrate judge issued his report-recommendation, the Second Circuit issued a decision in *Scott v. Albury,* 138F.3d 474, 1998 WL 100549 (2d Cir.Mar.9, 1998), in which it found that actual penalty rather than potential penalty governs a court's analysis of whether a liberty interest exists under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Scott,* 138 F.3d 474, 1998 WL 100549 at *5. The magistrate judge did not consider defendants' liberty interest argument because he found the due process prong of the *Sandin* analysis dispositive. My prior decision finding that Rabb adequately described a liberty interest rested on the actual versus potential penalty analysis of *Justice v. Coughlin,* 941 F.Supp. 1312, 1323–24 (N.D.N.Y.), which is no longer good law in light of *Scott. See Scott,* 138 F.3d 474, 1998 WL 100549 at *5. Second, at least as to one of plaintiff's claimed due process violations, I find that there may be issues of fact. Plaintiff alleged that he was denied access to the investigative report of Sergeant Shea, an alleged eyewitness to the stabbing incident. "[R]eports made by corrections officers in the immediate vicinity of the charged violations are virtually certain to be relevant to the issue of the petitioner's guilt of those violations, particularly where no eyewitness accounts are otherwise available." *Giano v. Sullivan,* 709 F.Supp. 1209, 1215–16 (S.D.N.Y.1987). Although there was an eyewitness—Corrections Officer Koziol—to the assault in this case, Mahar identified no reason why Shea's report, if it existed, should be treated as confidential. He simply stated that it was confidential. Hrg. Tr. at 27. Moreover, Mahar did not indicate affirmatively whether the report existed. *Id.* at 17, 27. Obviously if no report existed, there was no due process violation. However, if a report existed, a closer examination of its significance and the hearing officer's reason for denying Rabb access to it is required. On the state of the record as it exists now, I cannot conclude definitively whether Rabb's lack of access to Shea's report denied him due process.[1]

**\*3** Because there are factual issues on at least one of Rabb's due process claims and the rules for analyzing a liberty interest in avoiding segregated confinement have been defined more clearly, Rabb should be allowed to submit proof supporting his claim that the actual penalty he received "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. In light of the fact that

Rabb v. McMaher, Not Reported in F.Supp. (1998)
Case 9:15-cv-01437-LEK-ML   Document 76   Filed 08/30/18   Page 59 of 94
1998 WL 214425

the record will be reopened, the magistrate judge may also allow the parties to submit proof relevant to the due process issues.

All parties agree that defendant Coughlin had no personal involvement in the constitutional violations that Rabb alleges. Therefore, the claim against Coughlin must be dismissed.

Therefore, it is

ORDERED that defendant's objections to the April 29, 1997, order are denied; and it is further

ORDERED that the March 7, 1998, report-recommendation is approved in part and disapproved in part; and it is further

ORDERED that all claims against defendant Coughlin are dismissed; and it is further

ORDERED that this matter is recommitted to Magistrate Judge Sharpe for further proceedings consistent with this memorandum-decision and order and for further report-recommendation; and it is further

ORDERED that the Clerk of the Court serve a copy of this order on the parties by ordinary mail.

## REPORT–RECOMMENDATION

SHARPE, Magistrate J.

This matter was referred to the undersigned by the Honorable Rosemary S. Pooler, United States District Judge, pursuant to 28 U.S .C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, filed pursuant to 42 U.S.C. § 1983, plaintiff alleges that he was denied his due process rights at a Tier III disciplinary hearing which took place in October 1993 while plaintiff was incarcerated at Auburn Correctional Facility.

Presently before the court is plaintiff's motion for summary judgment (Docket # 48), and defendants' cross-motion for summary judgment (Docket # 62), pursuant to

FED.R.CIV.P. 56. Both sides have submitted memoranda of law in support of their motions.

For the following reasons, the court recommends that plaintiff's motion be denied, and that defendants' motion be granted and the complaint dismissed.

## DISCUSSION

*1. Summary Judgment:*

The court may grant summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–78, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

**\*4** A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.), *cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## 2. Due Process (Defendant Maher):

Defendants argue that plaintiff's claim that his rights were violated by a disciplinary hearing conducted by defendant Maher should be dismissed because, following

Rabb v. Maher, Not Reported in F.Supp. (1998)

1998 WL 214425

Case 9:15-cv-01437-LEK-ML   Document 76   Filed 08/30/18   Page 60 of 94

the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff had no liberty interest which required due process protection. However, the court need not reach the issue of whether plaintiff had a liberty interest because the court finds that plaintiff was not deprived of due process. *Bedoya v. Coughlin,* 91 F.3d 349, 352 (2d Cir.1996). In response to plaintiff's discovery requests, defendants filed a copy of the disciplinary hearing transcript and related documents which the court has reviewed. (Docket # 21, Ex. A).

The minimum requirements of due process were articulated by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). These requirements include "advance written notice of the claimed violation and a written statement from the fact finders describing the evidence relied upon and the reasons for disciplinary action." *Pino v. Dalsheim,* 605 F.Supp. 1305, 1313 (S.D.N.Y.1984) (citing *Wolff,* 418 U.S. at 563). The inmate must also be afforded the opportunity to gather and present evidence in his defense and must have the opportunity to present witnesses. *Id.* (citing *Wolff,* 418 U.S. at 564, 566, 570).

A prisoner's request to present witnesses may be denied if presenting the witnesses would be unduly hazardous to safety or to correctional goals. *Pino v. Dalsheim,* 605 F.Supp. at 1313 (citing *Wolff,* 418 U.S. at 564, 566, 570). A prisoner's request for witnesses can also be denied on the basis of irrelevance or lack of necessity. *Scott v. Kelly,* 962 F.2d 145, 146–47 (2d Cir.1992) (citing *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991)).

The disciplinary hearing in this case resulted from an incident which occurred on October 10, 1993 at Auburn Correctional Facility. The misbehavior report, issued by Corrections Officer Koziol, stated that Koziol found plaintiff and another inmate, Dorian Mohammed, fighting. Koziol stated that "[plaintiff] had an ice pick type weapon in his right hand and was stabbing Mohammed in the head and upper torso area." Koziol ordered the inmates to stop fighting, but they refused. Koziol then used his baton to strike plaintiff once on the back and once on the right forearm. Sgt. Shea struck plaintiff in the right leg with his baton. Plaintiff then threw down the weapon which was recovered by Officer Koziol and placed in an evidence locker. Plaintiff was charged with violating disciplinary rules 100.10 (assault on inmate), 100.13 (fighting), and 113.10 (possession of weapon).

**\*5** A Tier III hearing was commenced on October 16, 1993, with defendant Maher as the hearing officer. After a lengthy discussion about the evidence which plaintiff wanted to present, the hearing was adjourned until October 23, 1993.[2] Two witnesses requested by plaintiff testified at the hearing. Both witnesses were corrections officers, and were unable to testify in person because of their duty assignments. The witnesses testified via "duo-phone" within plaintiff's presence.

Corrections Officer Clink testified that he was working in the "frisk room" on the day of the incident and was called to the scene by another officer. Clink testified that he thought plaintiff left the visiting room at approximately 3:15, but that, due to the confusion of all the visitors leaving at the same time, the officer at the visiting room desk often wrote 3:30 for all visitors. Clink testified that plaintiff had been strip frisked following his visit, and described the strip frisk procedure. (T1.30–36).

Corrections Officer Kowal testified that he was working in the "Wire Gate" area, where the incident took place, on October 10, 1993. Kowal testified that he observed plaintiff coming through the Wire Gate from the Administration Building at approximately 3:25 or 3:30. Within "about two seconds," Kowal observed inmate Mohammed leave the wall and "go after" plaintiff. Kowal stated that he did not see a weapon at the start of the fight, and that other inmates quickly circled around plaintiff and Mohammed, blocking Kowal's view. Kowal further testified that Sgt. Shea and Officer Koziol arrived at the same time, and that he (Kowal) did not sign the misbehavior report because no one asked him to sign it. (T1.38–43).

Plaintiff gave the following account of the incident. Plaintiff testified that he had been returning to his cell block after seeing a visitor, when he was attacked by inmate Mohammed.

Plaintiff observed that Mohammed had a weapon in his hand and was trying to stab plaintiff. While plaintiff was trying to fight off Mohammed, Sergeant Shea and Corrections Officer Koziol arrived on the scene. Plaintiff was struck once by Sgt. Shea's baton, and Mohammed was struck in the back and right arm with another baton. At the same time, plaintiff disarmed Mohammed. The weapon caught in plaintiff's jacket. Plaintiff pulled the weapon out of his jacket and threw it down because he

Rabb v. McMaher, Not Reported in F.Supp. (1998)

Case 9:15-cv-01437-LEK-ML   Document 76   Filed 08/30/18   Page 61 of 94

1998 WL 214425

didn't want the corrections officers to think he was going to try to use the weapon on them. (T2.1–2).

Plaintiff claims that he was denied due process because the hearing officer rejected his requests for certain witnesses and evidence. Plaintiff denied having stabbed Mohammed, and sought to introduce evidence to support his claim that Mohammed had been involved in an altercation with another inmate prior to the incident with plaintiff, and had sustained his injuries in that altercation. [3]

Plaintiff requested that inmate Brunse Smith be called as a witness. According to plaintiff, inmate Smith had observed Mohammed in an altercation with two other inmates in the "south yard" around 2:45 or 3:00. Maher denied plaintiff's request because Smith's testimony had no connection to the incident between plaintiff and inmate Mohammed.

**\*6** Maher also denied plaintiff's requests for Mohammed's medical records and the photographs of Mohammed taken after the incident with plaintiff. Plaintiff wanted to introduce the records and photographs to support his claim that Mohammed had been stabbed during the prior incident. Maher determined that the records and photographs were confidential. However, Maher did examine the photographs himself, outside plaintiff's presence. After looking at the photographs, Maher concluded that it was impossible that Mohammed had been stabbed 30–45 minutes prior to the incident with plaintiff without anyone having noticed his injuries. (T2.3–4).

Plaintiff requested that nurse Bonnie Swim, who examined both inmates after the incident, be called as a witness in support of plaintiff's argument that Mohammed's wounds had occurred in the prior altercation. Plaintiff also hoped that Swim would corroborate his claim that he had only been struck once by a baton and that Mohammed had been struck twice, contrary to Officer Koziol's misbehavior report which indicated plaintiff had received all of the baton blows. Maher denied plaintiff's request to have Nurse Swim testify, finding that it would be redundant because her medical findings were reported in the Use of Force form. According to that form, Swim found that Mohammed had a small cut to his forehead, a small laceration to his left upper arm, a small laceration to his left chest, and multiple

small cuts to his scalp. Swim also reported that plaintiff complained of slight pain to the right outer aspect of his right leg above the knee, and that the area was slightly swollen with no discoloration and good range of motion in all extremities, including plaintiff's right leg.

Finally, plaintiff requested that inmate Mohammed be called as a witness, but Mohammed refused to appear. Plaintiff complains that Mohammed was not compelled to be a witness or at least forced to give a reason for his refusal. The hearing officer's assistant, Corrections Officer Taylor, stated that he had personally spoken to Mohammed and asked him if he wanted to testify. Mohammed stated that he did not, but refused to sign the refusal form. (T1.10). Plaintiff was given a copy of the form which indicated that Mohammed had refused to testify and refused to sign the form.

Plaintiff was not denied due process by the hearing officer's denial of plaintiff's requests for witnesses and other evidence. The reasons given for denying the requests were appropriate. Plaintiff was given an ample opportunity to present his defense without the requested evidence. Nonetheless, there was sufficient evidence for the hearing officer's decision finding plaintiff guilty of the charges in the misbehavior report. In order to meet the constitutional minimum, there must be "some" or "a modicum" of evidence supporting the disposition in a disciplinary hearing. *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The constitutional standard is less demanding than the "substantial evidence" standard utilized by the New York State Courts. *See In re Williams v. Coughlin,* 190 A.D.2d 883, 593 N.Y.S.2d 570 (3d Dep't), *lv. to appeal denied,* 82 N.Y.2d 651, 601 N.Y.S.2d 581, 619 N.E.2d 659 (1993). In this case, the hearing officer relied upon Officer Koziol's written misbehavior report, the testimony of Officers Clink and Kowal, plaintiff's testimony, and the information contained in the Unusual Incident Report. Therefore, summary judgment should be granted in favor of defendant Maher.

### 3. *Personal Involvement (Defendants Coughlin & Selsky):*

**\*7** The personal involvement of a defendant in a constitutional violation is a prerequisite for the assessment of damages in a section 1983 action. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir .1995). A supervisory official may

1998 WL 214425

be found to have personal responsibility for a violation if he or she directly participated in the violation; failed to remedy the wrong after learning about it through a report or appeal; created a policy or custom under which the unconstitutional practice occurred; allowed an unconstitutional practice to continue; or exhibited gross negligence in managing the subordinates who were responsible for causing the violation. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

The complaint contains no allegations of personal involvement by defendant Coughlin. Therefore, the complaint against defendant Coughlin should be dismissed.

Plaintiff appealed defendant Maher's hearing decision to defendant Donald Selsky. On January 14, 1994, defendant Selsky denied the appeal, informing plaintiff that the hearing decision was appropriate and that further administrative action was unwarranted. However, the court has found no constitutional violation related to plaintiff's hearing to which defendant Selsky might have been alerted by plaintiff's appeal. Thus, defendant Selsky cannot be found to be personally responsible for any constitutional violation in this case. The complaint should also be dismissed against defendant Selsky.

Plaintiff was sentenced to 365 days in the Special Housing Unit ("SHU") with loss of phones, packages, and commissary. However, Hearing Officer Maher only required plaintiff to serve 180 days of his sentence. Maher suspended the other 185 days, with the provision that if plaintiff was involved in any further misconduct during the first 90 days of his sentence, the hearing officer adjudicating those charges could reinstate the remaining

185 days. (T2.12). Plaintiff alleges that, while serving his sentence, he was charged with additional misconduct and was confined to the SHU for an additional 725 days, and that the additional time is unconstitutional under the "fruit of the poisonous tree doctrine." Plaintiff's claim is without merit. This doctrine applies to evidence obtained in a criminal investigation as the result of an unconstitutional search; it does not apply to prison disciplinary hearings. Further, this court has found no constitutional violation related to plaintiff's October 1993 disciplinary hearing.

**WHEREFORE,** based upon the findings in the above report, it is hereby

**RECOMMENDED** that plaintiff's motion for summary judgment (Docket # 48) be **DENIED,** and it is further

**RECOMMENDED** that defendants' cross-motion for summary judgment (Docket # 62) be **GRANTED** and the complaint dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp., 1998 WL 214425

Footnotes

1    In light of the fact that I am recommitting this matter to the magistrate judge for further development of the record, I reach no conclusion as to the validity of the remainder of Rabb's due process claims.

2    The hearing transcript is in two parts, transcribed by two different people. The first part ("T1") covers October 16, 1993 and part of October 23, 1993, and contains pages numbered I through 43. The second part ("T2") covers the remainder of October 23, 1993, and contains pages numbered 1 through 13.

3    Plaintiff also requested that his hearing assistant, Corrections Counselor Robert Mitchell, be called as a witness, "to clarify any inaccuracy regarding the assistance." Hearing Officer Maher denied plaintiff's request to have Mitchell testify because Mitchell's testimony was irrelevant to the incident. Plaintiff agreed. (T1.13).

KeyCite Yellow Flag - Negative Treatment

Distinguished by Morehouse v. York, N.D.N.Y., January 7, 2016

2015 WL 4394604
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edgardo L. LOPEZ, Plaintiff,

v.

N. WHITMORE, et. al., Defendants.

No. 9:13−CV−952 (BKS/ATB).
|
Signed July 16, 2015.

**Attorneys and Law Firms**

Edgardo L. Lopez, Last Known Address, Syracuse, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Christopher W. Hall, Assistant Attorney General, The Capitol, Albany, NY, for Defendants.

### ORDER

Hon. BRENDA K. SANNES, District Judge.

**\*1** Plaintiff Edgardo L. Lopez, a former New York State inmate, commenced this civil rights action under 42 U.S.C. § 1983 raising federal and state claims against New York State Department of Correction officials arising out of plaintiff's confinement at Marcy Correctional Facility. Dkt. Nos. 1, 32. On October 9, 2014, defendants filed a motion for summary judgment which was referred to United States Magistrate Judge Andrew T. Baxter. Dkt. Nos. 69, 83. On May 20, 2015, Judge Baxter issued a Report–Recommendation, recommending that defendants' motion for summary judgment be granted, and that plaintiff's First Amendment and Eighth Amendment claims be dismissed without prejudice to refiling and that plaintiff's due process and state law claims be dismissed with prejudice. Dkt. No. 83, p. 24. Judge Baxter advised the parties that:

> Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within

which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Sec. of Health & Human Servs., 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72.

Dkt. No. 83, p. 24. A copy of the Report–Recommendation was mailed to Lopez's last known address via certified mail. Dkt. No. 83. Lopez's copy of the Report–Recommendation was returned to the Court marked "Return to sender, unable to forward." Dkt. No. 85.

On June 8, 2015, Lopez filed a notice of change of address and a request for an extension of time to respond to the Report–Recommendation. Dkt. Nos. 86–87. Lopez noted that he received the Report–Recommendation that day at the public counter in the courthouse. Dkt. No. 87. The Court granted Lopez's request for an extension of time and, in a text order dated June 8, 2015, extended the due date for filing objections to June 22, 2015. The text order was mailed to Lopez's last known address. Lopez's copy of the text order was returned to the Court marked "Return to sender, not deliverable as addressed, unable to forward." Dkt. No. 89.

In a Decision and Order on June 29, 2015, the Court reminded Lopez of his obligation to notify the Court of any change in address, *see* Local Rule 10.1(c)(2), and provided Lopez an additional fourteen days to file his current address and any objections to the Report and Recommendation. Dkt. No. 90, pp. 2–4. The Court advised Lopez that if he failed to comply with the Decision and Order, the Court would "consider the Report and Recommendation as unopposed and review for clear error only." Dkt. No. 90, p. 4. The Decision and Order was served on Lopez via certified mail at his last known address. Dkt. No. 90. On July 8, 2015, the Court received an executed return receipt of delivery. Dkt. 91. Lopez has not, to date, filed any objections to the Report–Recommendation.

**\*2** Accordingly, as no objections to the Report–Recommendation have been filed and the time for filing objections has expired, the Court reviews the Report–Recommendation for clear error. *See Glaspie v. N.Y.C. Dep't of Corr.*, No. 10 CV 00188(GBD)(JCF), 2010 WL 4967844, at \*1, 2010 U.S. Dist. LEXIS 131629, at \*2–3 (S.D.N.Y. Nov. 30, 2010) (explaining that when no objections to report and recommendation are made, "the Court may adopt [it] if there is 'no clear error on the face of the record.' ") (quoting *Adee Motor Cars, LLC v. Amato*, 388 F.Supp.2d 250, 253 (S.D.N.Y.2005)). Having reviewed the Report and Recommendation in its entirety and having found no clear error, it is hereby:

**ORDERED** that the Report–Recommendation (Dkt. No. 83) is **ADOPTED in its entirety** for the reasons stated therein; and it is further

**ORDERED** that the defendants' motion for summary judgment (Dkt. No. 69) is **GRANTED;** and it is further

**ORDERED** that plaintiff's due process and state law claims are **DISMISSED with prejudice;** and it is further

**ORDERED** that plaintiff's remaining claims under 42 U.S.C. § 1983 relating to assault and retaliation are **DISMISSED without prejudice to refiling;** and it is further

**ORDERED** that the Clerk of the Court shall close this case; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order as well as the Report–Recommendation (Dkt. No. 83) upon all parties in accordance with the local rules.

**IT IS SO ORDERED.**

## REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c) by the Honorable Brenda K. Sannes, United States District Judge.

In this civil rights action, plaintiff claims that in May 2013, several correctional officers assaulted him during his confinement at the Marcy Correctional Facility ("Marcy") in retaliation for filing a grievance, and then issued several false disciplinary charges against plaintiff to cover up their actions. (Amended Compl ., Dkt. No. 32, ¶¶ 26–55). Plaintiff amended his complaint in November 2013 to further allege that the disciplinary hearing related to these charges violated his due process rights. (*Id.* ¶¶ 60–74). Plaintiff also raises several state law tort claims in connection with the alleged assault. (*Id.* ¶ 77, 80, 82).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 (Dkt. No. 69). Plaintiff has opposed the motion. (Dkt. No. 73) [1]. Defendants did not submit a reply.

For the reasons set forth below, this court recommends that defendants' summary judgment motion be granted. Plaintiff's claims should be dismissed because no rational fact finder could conclude that he exhausted his administrative remedies as to the assault and retaliation claims as required before filing an action under 42 U.S.C. § 1983, or that plaintiff failed to receive all the process that he was due during his disciplinary hearing. Plaintiff's state law claims, raised pursuant to the court's supplemental jurisdiction, should also be dismissed.

## DISCUSSION

### I. Summary Judgment

**\*3** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support

the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc. .,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin,* 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods,* 9:03–CV–480 (DNH/GHL), 2006 WL 1133247, at *3 & n. 10 (N.D.N .Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.' " *Id.,* 2006 WL 1133247, at *3 & n. 11 (quoting *Jeffreys v. City of New York,* 426 F.3d 549, 554–55 (2d Cir.2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II. Exhaustion of Administrative Remedies

**\*4** Plaintiff has alleged that he was the victim of two separate assaults by Marcy Correctional Officers on the morning of May 7, 2013. (Amended. Compl., Dkt No. 32, ¶¶ 31–38, 43). Plaintiff further alleges that the assaults were in retaliation for a prior grievance which he had submitted against one or more of the defendants, and that the defendants then issued him disciplinary tickets

for failing to obey orders and possessing a weapon in order to cover up their actions [2]. (*Id.* ¶ 55). Based on the record discussed below, the court concludes that no reasonable fact finder could conclude that the plaintiff had completed the administrative grievance process for these claims prior to commencing this federal proceeding. Accordingly, this court recommends that plaintiff's First Amendment retaliation claims and Eighth Amendment cruel and unusual punishment claims be dismissed for failure to exhaust administrative remedies.

### A. Legal Standards

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court held that, in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp.Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the superintendent of the relevant facility. Id. § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). Id. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." Id. § 701.3(a) (Inmate's Responsibility).

**\*5** At the same time that the Second Circuit decided *Giano,* it also decided four related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[3] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford,* has been a matter of some discussion.[4] Although the Second Circuit has not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in post-*Woodford* cases. *See, e.g., Messa v. Goord,* 652 F.3d 305, 309 (2d Cir.2011); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009).

### B. Application

Plaintiff filed a grievance on June 17, 2013, after being transferred to Downstate Correctional Facility ("Downstate"), alleging that on May 7, 2013, certain Marcy Correctional Officers verbally and physically abused him following a pat-down frisk while plaintiff was en route from the Marcy housing unit to the facility's infirmary. (Def. Statement of Material Facts, Dkt No. 69–1, ¶ 4; Pl's Resp. to Def. Statement of Material Facts,

Dkt. No. 73, 4). This grievance was acknowledged and forwarded for investigation by IGRC on June 19, 2013. (Dkt. No. 73–2, Pl's Ex. 3(B)). On September 17, 2013, the Downstate Superintendent denied plaintiff's grievance. (Hall Aff, Dkt. No. 69–3, Ex. 3; Dkt No. 73–2, Pl's Ex. 3(C)). On September 23, 2013, Plaintiff appealed this determination to the Central Office Review Committee. *Id.* On June 11, 2014, CORC issued its decision denying the grievance, the final step in the administrative process. (Dkt. No. 73–2, Pl's Ex. 3(D)).

While the administrative grievance process was ongoing, Plaintiff commenced this litigation on August 12, 2013, alleging essentially the same facts as his grievance. (Dkt. No. 1, Compl.). Plaintiff later submitted an Amended Complaint dated November 3, 2013 which restated the assault and retaliation claims and added a due process claim arising out of the related disciplinary hearing. (Dkt. No. 32, Amended Compl.)

In their motion for summary judgment, defendants argue that plaintiff failed to exhaust his administrative remedies relating to his assault and retaliation claims prior to commencing this federal litigation[5]. Plaintiff argues that his administrative remedies were exhausted upon filing his grievance on June 17, 2013, and that "[i]t is common knowledge that one not need to wait on the CORC decision in order to file a civil action against New York State Department of Corrections and Community Supervision (N.Y.SDOCCS) employees for committing such brutally physical body harm upon plaintiff." (Pl's Mem. of Law, Dkt. No. 73–1, at 7). Plaintiff also asserts that his administrative grievance was not resolved within a reasonable time, as it took three months to receive the Downstate Superintendent's determination, and another ten months before the CORC determination was issued. (*Id.* at 8).

**\*6** "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. Plaintiff did not complete the state administrative grievance process for the assault and retaliation claims before commencing this litigation, and therefore failed to exhaust his administrative remedies in accordance with the PLRA. The only excuse offered by plaintiff, that the administrative grievance process took an unreasonably long time, is unavailing. (Pl's Mem. of

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    4

Law, Dkt. No. 73–1, at 8). If the superintendent failed to timely respond to plaintiff's grievance, Plaintiff needed to appeal that failure to the CORC before commencing this litigation. "If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA." *Croswell v. McCoy,* 01–CV–0547, 2003 WL 962534, at *4 (N.D.N.Y. Mar.11, 2003) (Sharpe, M.J.). [6]

In applying the Second Circuit's three-party inquiry, plaintiff has offered no evidence to suggest that the grievance process was unavailable to him, that the defendants are estopped from asserting the defense of failure to exhaust, or that there are any other special circumstances under *Hemphill* and its progeny that would excuse plaintiff's failure to exhaust his administrative remedies.

In support of defendants' motion, Jeffrey Hale, the DOCCS Assistant Director of the Inmate Grievance Program ("IGP") and the custodian of records for CORC, which maintains files of grievance appeals by inmates, submitted a declaration based upon his review of those records. (Dkt. No. 69–2). Ass't Dir. Hale certified that CORC records contained five separate grievances filed by plaintiff for the period between September 2012 and May 2014. (Hale Decl., Dkt. No. 69–2, ¶¶ 6–7, 10, and Ex. B.).

During his August 26, 2014 deposition, plaintiff acknowledged that he was familiar with the DOCCS grievance process and understood that CORC is the final administrative step for deciding an inmate grievance. (Hall Aff, Dkt No. 69–3, Ex. 1 at 18). While plaintiff asserts that he was discouraged from reporting the alleged assaults immediately afterwards by threats from one or more of the defendants, plaintiff not only filed a detailed administrative grievance, but also raised the assault and retaliation allegations during his disciplinary hearing. *See, e.g., Black v. Fischer,* No. 12 Civ. 2341, 2013 WL 1314940, at *8–9 (S.D.N.Y. Mar. 28, 2013) (the plaintiff's claim that he was deterred from pursuing grievances by threats from a defendant was overcome by the fact that plaintiff filed other grievances and complaints during the relevant time period).

It is true that under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding. *Giano,* 380

F.3d at 678–79; *Johnson,* 380 F.3d at 697. However, such exhaustion is essentially limited to instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing, and (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim. *Murray,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *3 (collecting cases). Here, where plaintiff filed a grievance eleven days after the hearing, there is no indication that he reasonably believed that the disciplinary hearing was his only available remedy. In addition, the disciplinary hearing officer, defendant Cavaleri, informed plaintiff that his testimony regarding the assault was "not credible," and plaintiff declined to call any witnesses or question any witnesses. (Hall Aff., Dkt. No. 69–3, Ex. 4). No rational fact-finder could conclude that plaintiff had articulated or pursued his claim in a manner that afforded prison officials an opportunity to investigate his claim.

**\*7** During the pendency of this litigation, plaintiff received a decision by the CORC, dated June 11, 2014, upholding the Superintendent's denial of the grievance. (Dkt. No. 73–2, Pl's Ex. 3(C)). While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies ***before*** filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. *Neal v. Goord,* 267 F.3d 116, 122–23 (2d Cir.2001).

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action on the First and Eighth Amendment claims because he has now exhausted his remedies. As in *Neal,* plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." *Id.,* 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Id.*

## II. Due Process–Disciplinary Hearing

## A. Plaintiffs Request for Voluntary Dismissal

Plaintiff amended his complaint in November 2013 to add a due process cause of action alleging deficiencies in the disciplinary hearing arising out of the incidents at Marcy. (Dkt. No. 32). The Amended Complaint was filed after plaintiff's administrative appeal was denied, and therefore plaintiff has exhausted his administrative remedies as to the due process issue. *See Chavis v. Goord,* No. 9:00–CV–1418 (LEK/DEP), 2007 WL 2903950 (N.D.N.Y.2007) (citing *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Defendants seek summary judgment on the merits of this claim, arguing that plaintiff was afforded all process that was due.

In response, plaintiff has requested that the court dismiss his due process claim, in order to focus on the alleged assault. However, since plaintiff's request for dismissal comes after the defendants have answered (Dkt. No. 37) and moved for summary judgment (Dkt. No. 69), and the parties have not stipulated to dismissal, plaintiff has no right to a voluntary dismissal. Fed.R.Civ.P. 41(a)(1). Instead, dismissal lies in the discretion of the court. *See* Fed.R.Civ.P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."); *see also Lebewohl v. Heart Attack Grill LLC,* 890 F.Supp.2d 278, 304 (S.D.N.Y.2012) ("A trial court has great discretion in considering whether to grant a motion for voluntary dismissal under the rule.").

The circumstances of this case weigh heavily in favor of denying plaintiff's motion for voluntary dismissal and deciding defendants' motion for summary judgment on the due process claim. These claims have been pending since 2013, and the parties have engaged in discovery, including the deposition of plaintiff. (Hall Aff., Dkt. No. 69–3, Ex. 1). Defendants filed a summary judgment motion, fully supported by numerous affidavits and exhibits, to dismiss plaintiff's claims with prejudice, in October 2014. (Dkt. No. 69). Plaintiff, who requested permission in November 2013 specifically to add the due process claims, provides no justification for withdrawing these claims, other than stating that his "complaint is not about the Tier Hearing nor Due Process regarding the tier hearing, but the factual facts that the defendants physically assaulted plaintiff...." (Pl.'s Mem. of Law, Dkt. No. 73–1, at 3).

*8 At this stage of the proceedings, it would be unfair and unduly prejudicial to the defendants to allow plaintiff to withdraw his due process claim, particularly given the potential that plaintiff may re-file this litigation in order to raise the now administratively exhausted assault claims. *See, e.g., Murray v. Fischer,* No. 9:11–CV–225 (GLS/ATB), 2015 WL 457693, at *2–3) (denying prisoner's motion to dismiss certain claims without prejudice and granting defendants' motion for summary judgment instead); *Emory v. New York,* No. 11–CV–1774, 2013 WL 1881009, at *3 (E.D.N.Y. May 6, 2013) (denying plaintiffs' motion to dismiss action without prejudice where plaintiffs failed to proffer reasons why their "voluntary" dismissal came so late in the litigation, and only after the defendants marshaled strong arguments in favor of dismissal in substantive motions, both because it reflects plaintiffs' lack of diligence and because it may subject defendants to the burden of relitigating these same claims); *Krivchenko v. Clintondale Aviation, Inc.,* No. 1:13–CV–820 (TJM), 2014 WL 4684808, at *4 (N.D.N.Y. Sept.18, 2014) (denying voluntary motion to dismiss action, filed without adequate explanation after defendant filed a motion for summary judgment motion, because it indicates an "an undue vexatiousness" and could potentially subject the defendants to the burden of unnecessary relitigation). The court will now address the merits of plaintiff's due process claims.

## B. Legal Standards

In order to begin a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In *Sandin v. Conner,* the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ...., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483–84.

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process

protection. *See Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000); *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir.2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards,* 364 F.3d 60, 64–66 (2d Cir.2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin." Colon,* 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305–day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

**\*9** The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id.* (*citing, inter alia, Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

In certain cases, an inmate has a limited right to assistance with his disciplinary hearing. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993). An assistant has been held to be constitutionally necessary in cases in which a plaintiff is confined in SHU, illiterate, or unable to grasp the complexity of the issues, and therefore, unable to marshal evidence and present a defense. *Id.* (citation omitted). In those cases, the assistant must do what the plaintiff would have done if he were able, but need not go beyond the inmate's instructions. *Id.*

### C. Application
Since the disciplinary hearing resulted in a one year sentence to the special housing unit ("SHU"), plaintiff is considered to have a liberty interest subject to due process protection. Plaintiff alleges that defendants issued him fabricated disciplinary tickets to cover up the alleged retaliatory assault, leading to procedural due process and privacy violations. It is well established that fabricated or false disciplinary charges do not violate an inmate's

due process rights, so long as an inmate received a proper disciplinary hearing, with a determination based upon "some evidence." *See Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). Therefore, the analysis focuses on the disciplinary hearing itself, and this court recommends that defendants' motion for summary judgment be granted.

### 1. Adequacy of Assistance at the Hearing
Because he was transferred to the SHU after disciplinary charges relating to the threatening notes were filed against him, plaintiff was entitled to assistance in preparing for his hearing. *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998) (citing *Eng v. Coughlin,* 858 F.2d 889, 898 (2d Cir.1988)). Plaintiff alleges that he requested assistance, but that the employee assistant, who is not named as a defendant, refused to help plaintiff locate relevant documents and threatened physical violence. (Amended Compl., Dkt. No. 32, ¶ 68).

At the beginning of the disciplinary hearing, defendant Cavaleri inquired about the pre-hearing assistance, and asked whether plaintiff wanted to identify any witnesses or make any other requests before the hearing commenced. (Hall Aff., Dkt. No. 69–3, Ex. 4 at 4). At the close of the hearing, plaintiff was also given an opportunity to raise any issues on the record. (*Id.* at 36). Plaintiff declined to raise any issues before or after the hearing about the quality or conduct of his pre-hearing assistant. Plaintiff's allegations in the Amended Complaint, which do not identify the offending officer, are not sufficient to overcome defendants' motion for summary judgment. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case"). Moreover, even assuming for purposes of this motion that plaintiff's allegations are accurate, plaintiff waived any objection to inadequate assistance when he failed to raise the issue during the disciplinary hearing. *Jackson v. Johnson,* 30 F.Supp.2d 613, 619 (S.D.N.Y.1998) (plaintiff waived right to object to allegedly inadequate assistance when he did not raise the issue when questioned by hearing officer); *Hailey v. Provost,* No. 94–CV–1616 (RSP/DS), 1997 WF 627547 at \*2 & n. 3 (N.D.N.Y., Oct. 9, 1997) (inmate waived right to effective employee assistance by specifically answering "no sir" after hearing officer asked if he needed any additional assistance).

### 2. Use of OMH Information

**\*10** Plaintiff alleges that defendant Cavaleri's consideration of testimony from State Office of Mental Health ("OMH") staff regarding plaintiff's psychiatric and medical history violated his due process right to privacy. (Amended Compl., Dkt. No. 32, 71). Defendant Cavaleri advised plaintiff during the hearing that such testimony was admitted and would be considered, but did not disclose the contents of that evidence. Following policy, the OMH testimony was heard without the plaintiff present. (Hall Aff., Dkt. No. 69–3, Ex. 4 at 36).

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (citing *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson,* 426 F.3d 187, 201 (2d Cir.2005) (citing *Whalen,* 429 U.S. at 598–600). The right to privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.' " *Matson v. Bd. of Ed. of City School Dist. of New York,* 631 F.3d 57, 64 (2d Cir.2011) (quoting inter alia *Doe,* 15 F.3d at 267).

With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Id.* (citations omitted). Prison officials may impinge upon the inmate's privacy right only to the extent that their actions are "reasonably related to legitimate penological interests." *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999).

The Second Circuit has concluded that the OMH policy of offering such testimony outside the patient's presence during a prison disciplinary proceeding is constitutionally valid and does not violate any due process right. *See Powell v. Coughlin,* 953 F.2d 744, 749 (2d Cir.1991). As the disclosure of unfavorable mental health evaluations in an inmate's presence will likely impair the inmate-clinician relationship, and the disclosure of favorable evaluations may encourage inmates to "act out" in order to obtain such findings, the policy of hearing mental health testimony outside the inmate's presence, followed in this case, is reasonably related to legitimate penological interests and is an appropriate measure. *Id.*

### 3. "Some" Evidence Standard

Plaintiff alleges that defendant Cavaleri was biased, that plaintiff's guilt was not based upon reliable evidence, and that Cavaleri failed to consider plaintiff's testimony, particularly about injuries following the alleged assault. (Amended Compl., Dkt. No. 32, 74). Defendants argue that the disciplinary hearing transcript shows that defendant Cavaleri explained plaintiff his rights, read him the charges and took his not guilty plea. (Def. Mem. of Law at 10–12). Plaintiff was allowed to offer testimony, and given the opportunity to call and question witnesses. (Hall Aff., Dkt. No. 69–3, Ex. 4 at 8–22). Plaintiff declined to propose questions for any witness. (*Id.*). When the witness testimony was concluded, plaintiff was given an opportunity to rebut their statements. (*Id.* at 26–30). After plaintiff raised the issue of injuries suffered in the alleged assault, defendant Cavaleri reviewed plaintiff's medical records with the assistance of a physician's assistant. (*Id.* at 35). When issuing his disposition, defendant Caveleri noted the consistent testimony of seven witnesses, and the lack of any evidence that would support plaintiff's testimony (*Id.* at 39).

**\*11** As the hearing officer, Defendant Cavaleri was authorized to make credibility determinations. *See Lewis v. Johnson,* No. 9:08–CV–482 (TJM/ATB), 2010 WL 3785771, at \*11 n. 25 (N.D.N.Y. Aug.5, 2010) ("the Second Circuit has required that a hearing examiner make an independent assessment of the credibility of certain sources of evidence at a prison disciplinary hearing"), *Rep't. Rec. adopted,* 2010 WL 3762016, at \*1 (N.D.N.Y. Sept.20, 2010). It is well settled, however, "that prison disciplinary officers are not held to the same standard of neutrality as adjudicators in other contexts." *Alien v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). "The degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.* An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact. *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir.1989); *Clyde v. Schoellkopf,* 714 F.Supp.2d 432, 437–38 (W.D.N.Y.2010).

The constitutional standard for sufficiency of evidence in a prison disciplinary hearing is whether there is "some" or "a modicum" of evidence to support the hearing officer's determination. *Sira v. Morton,* 380 F.3d 57, 76 (2d Cir.2004) (citing *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). In this case, there was sufficient evidence supporting the hearing officer's

determination. Defendant Cavaleri specifically noted the consistent testimony of seven witnesses, and the lack of evidence to support plaintiff's testimony, which was deemed not credible.

The record evidence supports the conclusion that plaintiff's due process rights were satisfied in his disciplinary hearing. Accordingly, this court recommends that defendants' motion for summary judgment as to plaintiff's due process claims against defendant Cavaleri be granted. Because his only involvement in plaintiff's claims was to affirm the results of a disciplinary hearing that this court has found comported with due process, summary judgment should also be granted with respect to defendant Prack [7].

### III. State Law Claims

Plaintiff asserts a number of tort claims including assault and battery, invasion of privacy, sexual harassment, infliction of mental, emotional and physical distress and negligence in connection with the incidents at Marcy, all arising out of New York State statutory and common law. (Am. Compl., Dkt No. 32, 77, 79, 80, 82). Defendants have moved for summary judgment dismissing these claims, arguing that pursuit of such tort claims in this action is statutorily precluded pursuant to New York Corrections Law § 24. (Def. Mem. of Law, Dkt. No. 69–4, at 12–13). Plaintiff counters that the United States Supreme Court ruled Corrections Law § 24 unconstitutional, and that, in any case, state law immunity does not extend to excessive force claims, which fall outside the ordinary scope of a correctional officer's employment duties. (Pl.'s Mem. of Law, Dkt. No. 73–1, at 9–12).

**\*12** New York Corrections Law § 24 precludes "the assertion of claims against corrections officers in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out of the acts committed by corrections officers within the scope of their employment." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996).

In *Haywood v. Drown,* 556 U.S. 729, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009), cited by plaintiff in his response (Pl's Mem. of Law, Dkt. No. 73–1, at 11), the Supreme Court held that New York Corrections Law § 24 was unconstitutional to the extent that it precludes inmates

from pursuing § 1983 actions in state or federal court. However, plaintiff overstates the scope of *Haywood* as it pertains to this litigation.

Although the *Haywood* decision found New York Corrections Law § 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under federal law, such as § 1983. In applying supplemental jurisdiction, federal courts are bound to apply state substantive law to claims brought pursuant to state statute or common law. *Baker,* 77 F.3d at 15. The courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS officials. *See, e.g., Rucano v. Koenigsmann,* No. 9:12–CV–35 (MAD/RFT), 2014 WL 1292281, *16 (N.D.N.Y., Mar.31, 2014); *Rounds v. Thompson,* No. 9:12–CV–953, 2013 WL 3187074 at *4 (N.D.N.Y.2013) (collecting cases). If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court must not allow that claim to be appended to a federal law claim in federal court. *Baker,* 77 F.3d at 15.

Plaintiff alleges that he was assaulted during a pat-down by correctional officers as he traversed a prison walkway, and then again while being transported and questioned about the incident. (Amended Compl. Dkt No. 32, ¶ 24–43). Transporting an inmate and subduing that individual, should a disciplinary issue arise, is 'common conduct by a DOCCS officer or sergeant.' " *Crosby v. Russell,* No. 9:10–CV–595, 2014 WL 3809129, *5 (N.D.N.Y.2014) (quoting *Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty. Supervision,* No. 11–CV–0079, 2013 WL 5347468, at *3 (W.D.N.Y. Sept. 23, 2013)). Ultimately, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.' " *Id.,* 2014 WL 3809129, *6 (quoting *Cepeda v. Coughlin,* 128 A.D.2d 995, 996, 513 N.Y.S.2d 528 (3d Dep't 1987)). Therefore, based upon the allegations in the amended complaint, this court recommends that defendants' motion for summary judgment as to plaintiff's state law claims be granted, without leave to amend.

Even if New York Corrections Law § 24 did not apply, this court would still recommend dismissal of plaintiff's state law claims in light of the recommendations of dismissal of all federal causes of action in plaintiff's amended complaint. *See* 28 U.S.C. § 1367(c)(3) (the district court

may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir.1994).

**\*13 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 69) be **GRANTED,** and that plaintiff's First Amendment and Eighth Amendment Claims be **DISMISSED WITHOUT PREJUDICE TO REFILING,** and that plaintiff's due process and state law claims be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Filed May 20, 2015

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4394604

Footnotes

1    Plaintiff requested oral argument on defendant's motion. That request is denied, and this court will make its report and recommendation based upon the parties' papers and the record.

2    Defendants assert that plaintiff has failed to state a claim in connection with the misbehavior reports, since plaintiff's allegations of retaliation are conclusory and defendant was found guilty based upon the evidence at his disciplinary hearing. (Def. Mem. of Law, Dkt. No. 69–4, at 8–10). In his response, plaintiff has requested that the court dismiss the claim for retaliatory misbehavior reports in order to focus on the assault claim. (Pl.'s Mem of Law, Dkt. No. 73–1, at 9). Because I am recommending that defendants be granted summary judgment on the retaliation claim due to plaintiff's failure to exhaust administrative remedies, I do not need to address whether summary judgment should be granted on the merits on this claim.

3    *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

4    See, e.g., *Newman v. Duncan,* 04–CV–395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe,* 655 F.Supp.2d 274, 285–86 n. 7 (S.D.N.Y.2009).

5    Defendants had previously raised the failure to exhaust administrative remedies as an affirmative defense in their answer to the Amended Complaint. (Dkt. No. 37, Def.Answer, 12).

6    The New York regulations specifically state that if a grievance is not decided within the time limits provided, the inmate may appeal to the next step. 7 N.Y.C.R.R. § 701.6(g)(ii)(2). In *Pacheco v. Drown,* 9:06–CV–20, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010), U.S. District Judge Glenn Suddaby held that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal may be appealed to the next level, including the CORC, in order to properly complete the grievance process. *Accord, Murray v. Palmer,* 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, *2 & nn. 4, 6 (N.D.N.Y. March 31, 2010).

7    The court notes that if plaintiff had stated a valid due process claim, the fact that defendant Prack affirmed the disciplinary finding could constitute sufficient personal involvement. *See Thomas v. Calero,* No. 09–CV–5209, at *11–18 (S .D.N.Y. Mar. 17, 2011) (Rep't.-Rec.) (lengthy discussion of personal involvement as it relates to the affirmance of a disciplinary hearing and determination that such a claim would survive a motion to dismiss); *Rodriguez v. Selsky,* No. 9:07–CV–432, 2011 WL 1086001, at *4–7 (N.D.N.Y. Jan.25, 2011) (Rep't–Rec.), *adopted,* 2011 WL 830639 (N.D.N.Y., Mar.3, 2011).

**Lopez v. Whitmore, Not Reported in F.Supp.3d (2015)**
Case 9:15-cv-01437-LEK-ML    Document 76    Filed 08/30/18    Page 73 of 94

2015 WL 4394604

---

**End of Document**                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw.

Page 1

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

> FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

### I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

### II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

### III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord*, 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie*, 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray*, 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer*, 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer*, 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Victor SMITH, Plaintiff,
v.
Brian FISCHER, NYS Docs Commissioner et al.,
Defendants.
No. 9:07-CV-1264.

Feb. 2, 2009.
Victor Smith, Sodus, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Shoshanah V. Bewlay, Esq., Ass't Attorney General, of Counsel, Albany, NY, for Defendants.

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Victor D. Smith alleges that seven employees [FN1] of the New York State Department of Correctional Services ("DOCS") wrongfully confined him to the Special Housing Unit ("SHU") and prevented him from attending his mother's wake. Currently pending before the Court is Defendants' motion to dismiss the amended complaint (Dkt. No. 15) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 28.) For the reasons that follow, I recommend that Defendants' motion be granted.

> FN1. Brian Fischer (Commissioner of DOCS), Susan Connell (Superintendent of Oneida Correctional Facility), John Badger, Karl Adamik, Ivy Lombardo (Acting Superintendent of Orleans Correctional Facility), Anthony Labriola, and Peter Naughton.

### I. BACKGROUND

#### A. Summary of Plaintiff's Complaint

The amended complaint (Dkt. No. 15) ("the complaint") is the operative pleading in this case. It alleges that:

1. On August 13, 2007, Defendant Adamik issued a misbehavior report charging Plaintiff with various offenses. (Dkt. No. 15 at ¶ 6(1).)

2. Defendants held Plaintiff in the SHU at Oneida Correctional Facility pending completion of a Tier III hearing. (Dkt. No. 15 at ¶ 6(1).)

3. The Tier III hearing was convened on August 17, 2007. Defendant Badger was the hearing officer. He adjourned the hearing until August 28, 2007. (Dkt. No. 15 at ¶ 6(2).)

4. Plaintiff's Tier III Hearing was reconvened on August 28, 2007. Defendant Badger found Plaintiff guilty of all charges. He sentenced Plaintiff to 90 days of S-Block confinement at Orleans Correctional Facility, with no credit for the time Plaintiff served in the SHU pending completion of his hearing. (Dkt. No. 15 at ¶ 6(2).) Plaintiff also lost recreation, packages, commissary, and phone privileges and three days of good time credits. (Dkt. No. 15, Ex. A.)

5. Thereafter, while Plaintiff was being held in the S-Block, Defendants Connell, Labriola, Lombardo, and Naughton denied Plaintiff's requests for discretionary review. (Dkt. No. 15 at ¶ 6(3).)

**\*2** 6. On October 25, 2007, Plaintiff filed a claim with the New York State Court of Claims, claiming that DOCS officials had wrongfully denied him permission to attend his mother's wake. (Dkt. No. 15 at ¶ 5(b).)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

7. On October 26, 2007, Albert Prack, acting on behalf of Defendant Brian Fischer, reversed the disciplinary charges against Plaintiff. He concluded that Defendant Adamik's misbehavior report did not provide enough information to support the charges. (Dkt. No. 15 at ¶ 6(3) and Ex. B.)

8. Despite the reversal of the charges on October 26, 2007, Defendants Labriola and Lombardo denied Plaintiff's request to be released back into the general population and continued to hold him in the S-block under a "retention admission" status. (Dkt. No. 15 at ¶ 6(4).)

9. Plaintiff was released to the general prison population on November 21, 2007. (Dkt. No. 15 at ¶ 6(4).)

Plaintiff complains that Defendants' actions resulted in him being "falsely confined/imprisoned under sanctions for 98 days," including "14 days [FN3] prior to completion of a sup't (sic) hearing and 24 days following the reversal of the charges." (Dkt. No. 15 at ¶ 7.) Plaintiff also complains that he was "purposely denied an approved wake visit." (Dkt. No. 15 at ¶ 7.) Defendants' actions, Plaintiff asserts, amounted to "neglect, unfair treatment and reprisal-based conduct" that "served to create mental anxiety, irritability, paranoia and sleep deprivation at a critically sensitive juncture." (Dkt. No. 15 at ¶ 7.)

> [FN2.] Elsewhere in the complaint, Plaintiff alleges that he was "held in the ... SHU pending completion of a Tier III Sup't Hearing *beyond* the 14 day time requirement to complete said hearing." (Dkt. No. 15 at ¶ 6 (1), emphasis added.) According to the timeline presented in the complaint, fifteen days passed between the time Defendant Adamik issued the misbehavior report on August 13 and the completion of the disciplinary hearing on August 28. For the purposes of this decision, I have assumed that Plaintiff was confined for 15 days pending completion of the hearing.

Plaintiff's legal arguments, liberally construed, appear to assert four causes of action: (1) a procedural due process claim under the Fourteenth Amendment; (2) a substantive due process claim under the Fourteenth

Amendment; (3) an inadequate-prison-condition claim under the Eighth Amendment; and (4) an equal protection claim under the Fourteenth Amendment.

In his prayer for relief, Plaintiff requests $15,000 in compensatory damages "for mental and emotional injury" plus $10,000 in punitive damages. (Dkt. No. 15 at ¶ 9.)

**B. Summary of Grounds in Support of Defendants' Motion**

Defendants argue that (1) the complaint fails to allege facts plausibly suggesting a violation of the Fourteenth Amendment because Plaintiff has not alleged any "atypical and significant hardship"; (2) the complaint fails to allege facts plausibly suggesting a violation of the Eighth Amendment because (a) Plaintiff's confinement in the SHU does not constitute cruel and unusual punishment as a matter of law; and (b) prisoners have no liberty interest in funeral visits; (3) the complaint fails to state a claim under the Equal Protection Clause because Plaintiff does not allege that he was treated any differently than any other similarly situated person; (4) the complaint fails to allege facts plausibly suggesting that Defendants Connell, Fischer, Labriola, Lombardo, and Naughton were personally involved in any of the constitutional violations alleged; (5) Plaintiff's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e) because he has not alleged any facts plausibly suggesting that he suffered a physical injury; and (6) Defendants are protected by the doctrine of qualified immunity. (Dkt. No. 28-2.) I will address only Defendants' first, second and third arguments, as they are dispositive.

**C. Summary of Plaintiff's Response to Defendants' Arguments**

**\*3** In response to Defendants' motion to dismiss, Plaintiff argues that:

1. There can be no governmental immunity extended to Defendants because they negligently performed their ministerial duties;

2. Defendants breached administrative procedures and protocols by mishandling his Tier III hearing, denying his request to attend his mother's wake, and confining him to excessive detention in the SHU after the charges against him were reversed; and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

3. As a result of not attending his mother's wake, Plaintiff now suffers from mental anxiety, irritability, paranoia, and sleep deprivation. (Dkt. No. 29.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[FN3] or (2) a challenge to the legal cognizability of the claim.[FN4]

FN3. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN4. *See* *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule

12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN5] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN6] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

sufficiency of [plaintiff's] claims." [FN7]

FN5. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN6. *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN7. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN8] However, it is well established that even this liberal notice pleading standard "has its limits." [FN9] As a result, several Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard.[FN10]

FN8. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN9. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN10. *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord, Dura Pharm.,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect"

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[FN11] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

> FN11. The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic,* 127 S.Ct. at 1969.

**\*4** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all

the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic* ).[FN12] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[FN13]

> FN12. *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at \*14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that *"Bell Atlantic* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Bell Atlantic's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Bell Atlantic* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

> FN13. *See, e.g., Jacobs v. Mostow,* 281 F. App'x

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Rule 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Bell Atlantic*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[FN14] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

FN14. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Bell Atlantic,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept all material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN15] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." [FN16] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

> FN15. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

> FN16. *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**\*5** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [FN17] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN18] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN19] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint. [FN20] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN21]

FN17. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord*, 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN18. *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN19. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN20. *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002) (denying leave to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN21. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at *2 (D.Vt. Aug.13, 2008) (denying pro se plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983

because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[FN22] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN23] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN24] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN25]

FN22. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN23. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

FN24. *See* *McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN25. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn,

J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

**III. ANALYSIS**

**A. Plaintiff Has Not Stated a Procedural Due Process Claim**

The complaint alleges that Defendants violated Plaintiff's due process rights under the Fourteenth Amendment. (Dkt. No. 15 at ¶ 7.) The undersigned has construed the complaint as asserting both a procedural due process claim and a substantive due process claim.[FN26] Construed liberally, the complaint asserts that Plaintiff's procedural due process rights were violated by (1) the length of his detention in the SHU; (2) the fact that the disciplinary charges were based on a false report; (3) the fact that he was held for 15 days in the SHU prior to the completion of his disciplinary hearing; and (4) the denial of the wake visit.

FN26. Defendants construed the complaint as asserting only a procedural due process claim. (Dkt. No. 28-2 at 10-11.)

*1. The length of Plaintiff's detention in the SHU*

Regarding the length of his detention, Plaintiff asserts that his due process rights were violated because he was "falsely confined/imprisoned under sanctions for 98 days." (Dkt. No. 15 at ¶ 7.) Defendants argue that the complaint fails to state such a claim because Plaintiff has failed to allege any "atypical and significant hardship." (Dkt. No. 28-2 at 3-5.) Defendants are correct.

In order to state a claim for violation of his procedural due process rights, Plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000).

*6 An inmate has a liberty interest in remaining free

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). The issue, then, is whether Plaintiff's confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether a disciplinary confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer,* 364 F.3d at 64. Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions [FN27]." *Palmer,* 364 F.3d at 65. For confinements of an "intermediate duration-between 101 and 305 days-development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer,* 364 F.3d at 64-65. Disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer,* 364 F.3d at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000)).

> FN27. "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

Here, Plaintiff alleges that he served 98 days in the SHU. Accordingly, a protected liberty interest is implicated only if Plaintiff was confined under conditions "more severe" than "normal" SHU conditions. Plaintiff has alleged no such conditions. Compare *Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1999) (plaintiff alleged that while in the SHU he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes); *Palmer,* 364 F.3d at 66 (plaintiff alleged that he suffered unusual SHU conditions such as being deprived of his property, being mechanically restrained whenever he was escorted from his cell, and being out of communication with his family); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (plaintiff alleged that he was confined to his cell for 24 hours a day, not permitted to shower for weeks at a time, denied hygiene products, and denied utensils); *Wheeler v. Butler,* 209 F.App'x 14 (2d Cir.2006) (plaintiff alleged that he was denied the use of his hearing aids during his SHU confinement). Therefore, Plaintiff has not sufficiently alleged that his confinement in the SHU deprived him of a protected liberty interest.

**\*7** District courts in the Second Circuit are split on whether a prisoner can state a procedural due process cause of action when he alleges that he served less than 101 days in the SHU but does not allege conditions more severe than normal SHU conditions. Compare *Gonzalez-Cifuentes v. Torres,* No. 9:04-cv-1470 GLS/DRH, 2007 WL 499620, at \* 3 (N.D.N.Y. Feb.13, 2007) ("The Second Circuit has held that at least where the period of confinement exceeded thirty days, refined fact-finding is required to resolve defendants' claims under *Sandin.* No such fact-finding can occur ... on a motion to dismiss") and *Smart v. Goord,* 441 F.Supp.2d 631, 641 (S.D.N.Y.2006) ("Smart has not alleged that the conditions of her confinement were more severe than normal SHU conditions ... However, such detailed factual allegations are not necessary to withstand a motion to dismiss ... Since Smart has alleged that she was confined for seventy days, she has met her burden in alleging the deprivation of a protected liberty interest") with *Alvarado v. Kerrigan,* 152 F.Supp.2d 350 (S.D.N.Y.2001) (granting motion for judgment on the pleadings where prisoner's allegations about the conditions of his 93-day SHU

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

confinement failed to "elevate his confinement to the level of deprivation required under *Sandin); Sales v. Barizone,* No. 03 Civ. 6691RJH, 2004 WL 2781752, at *7 (S.D.N.Y. Dec.2, 2004) (granting motion to dismiss with leave to amend because plaintiff's "due process claim arising out of two months' confinement in the SHU ... cannot survive the *Sandin* test absent further allegations") *Tookes v. Artuz,* No. 00 Civ. 4969 RCC HBP, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("No such additional egregious circumstances are pled here. Indeed, the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement. Nor has [plaintiff] responded to the defendants' motion in order to provide further detail. Therefore, dismissal of plaintiff's due process claims is appropriate"); and *Prince v. Edwards,* No. 99 Civ. 8650, 2000 WL 633382, at *5 (S.D.N.Y. May 17, 2000) (dismissing case with prejudice where the complaint contained "no allegations whatever regarding the conditions of [prisoner's 66-day] confinement."). The Second Circuit has never addressed this issue directly [FN28]

> FN28. While the Second Circuit has stated that "development of a detailed record will assist appellate review" of SHU cases and that "development of a detailed record of the conditions of the confinement relative to ordinary conditions is required," it has done so only in cases involving "intermediate" SHU confinements of 101 to 305 days. *Colon,* 215 F.3d at 232; *Palmer,* 364 F.3d at 64-65. Even in this "intermediate" context, where a detailed record is "required," the Second Circuit has not remanded a case for further development of the record absent an allegation of severe SHU conditions. For example, in *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007), the plaintiff was confined to a super-restrictive housing unit for six months. He sued, arguing in part that his procedural due process rights were violated. The defendants moved to dismiss. The district court denied the motion, finding that the plaintiff had alleged the deprivation of a liberty interest. The defendants brought an interlocutory appeal. The Second Circuit affirmed, finding that "the Plaintiff's confinement of more than six months

fell in the intermediate range, thereby requiring inquiry into the conditions of his confinement, which he *sufficiently alleges* to have been severe." *Iqbal,* 490 F.3d at 163 (emphasis added).

The undersigned agrees with the *Alvarado, Sales, Tookes,* and *Prince* courts that a motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions. The undersigned adopts this view for two reasons. First, as discussed at length above, Rule 8 requires that a complaint include factual allegations that raise a right to relief above the speculative level to the plausible level. Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, his right to relief under a procedural due process theory is purely speculative. Second, the Second Circuit's manner of reviewing motions to dismiss in SHU confinement cases suggests that dismissal is the better course. In its cases, the Second Circuit has focused on the *content* of the prisoner's allegations regarding SHU conditions rather than establishing a bright-line rule that a determination of whether conditions were "atypical and significant" cannot be resolved on a Rule 12(b)(6) motion. For example, in *Ortiz,* the district court granted the defendants' motion to dismiss a case in which a prisoner complained of a 90-day SHU confinement. The Second Circuit reversed, not because the *Sandin* issue can never be decided at the motion to dismiss stage, but because *the prisoner had alleged the existence of "conditions in SHU far inferior to those prevailing in the prison in general." Ortiz,* 380 F.3d at 655 (emphasis added).

**\*8** Plaintiff's bare allegation that his procedural due process rights were violated by his 98-day confinement in the SHU is insufficient to state a claim. Therefore, I recommend that this claim be dismissed with leave to amend.

2. *False accusation*

To the extent that Plaintiff claims that his SHU

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

confinement violated his due process rights because it stemmed from a false accusation, I note that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)); *accord, Pittman v. Forte,* 01-CV-0100, 2002 WL 31309183, *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something such as "retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 WL 965345, at *8 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted]. Here, Plaintiff does not claim that the misbehavior report was issued in retaliation for Plaintiff's exercise of a constitutional right. Read broadly, the complaint alleges that Defendants took some actions in retaliation for Plaintiff's filing of a complaint with the Court of Claims regarding the denial of the wake visit. However, Defendant Adamik issued the misbehavior report several months *before* Plaintiff filed his complaint with the Court of Claims. Therefore, Defendant Adamik could not possibly have been retaliating for Plaintiff's exercise of his constitutional right of access to the courts when he issued the misbehavior report. Accordingly, the complaint does not state a claim for a procedural due process violation based on the filing of an allegedly false misbehavior report and I recommend that the claim be dismissed with leave to amend.

3. *SHU confinement pending completion of disciplinary hearing*

Plaintiff alleges that he was "held in the ... SHU pending completion of a Tier III Sup't Hearing beyond the 14 day time requirement to complete said hearing." (Dkt. No. 15 at ¶ 6(1).) DOCS regulations provide that:

The disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or

correctional goals.

N.Y. Comp.Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 251-5.1(b). Pursuant to this regulation, New York has granted inmates an interest in remaining free from restraints of more than 14 days pending a disciplinary hearing unless the commissioner or his designee authorizes a delay. Here, the complaint alleges that Defendant Badger authorized a delay. (Dkt. No. 16 at ¶ 6(2).) The complaint does not state whether or not the record of the hearing reflected the reasons for the delay. However, that fact is immaterial because the regulation does not require that the record reflect the reason: it merely states that the record "should" reflect the reason. See *Dallio v. Spitzer,* 343 F.3d 553, 562 (2d Cir.2003) (" 'Shall' is universally understood to indicate an imperative or mandate, whereas 'should,' to the extent it implies any duty or obligation, generally references one originating in propriety or expediency"). Accordingly, Plaintiff did not have a state-created liberty interest in remaining free from the confinement or restraint of being held in the SHU for 15 days pending completion of his disciplinary hearing. Even if he had such an interest, Plaintiff has not pleaded that a one-day delay imposed an "atypical and significant" hardship on him. Indeed, such delays are reasonably routine. See e.g. *Tookes v. Artuz,* No. 00 CIV 4969 RCC HBP, 2002 WL 1484391 (S.D.N.Y. July 11, 2002) (17-day delay between issuance of misbehavior report and conclusion of disciplinary hearing did not implicate procedural due process). Therefore, Plaintiff has not alleged facts plausibly suggesting that his procedural due process rights were violated by the one-day delay in completing his disciplinary hearing.

4. *Wake visit*

**\*9** Plaintiff's allegations regarding the denial of his wake visit do not state a claim for violation of his procedural due process rights. Prisoners do not have a constitutionally protected interest in attending the funeral of a relative. *Jackson v. Portuondo,* No. 9:01-CV-0379 (GLS/DEP), 2007 WL 607342, at *12 (N.D.N.Y. Feb.20, 2007); *Verrone v. Jacobson,* No. 95 CIV. 10495(LAP), 1999 WL 163197, at *5 (S.D.N.Y. Mar.23, 1999); *Green v. Coughlin,* No. 94 Civ. 3356(JFK), 1995 WL 498808, at *1 (S.D.N.Y. Aug.22, 1995); *Colon v. Sullivan,* 681

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

F.Supp. 222, 223 (S.D.N.Y.1988). Nor has such a right been created in New York by statute or regulation. The relevant New York statute states:

> [T]he commissioner of correctional services *may* permit any inmate confined by the department except one awaiting the sentence of death to attend the funeral of his or her father, mother, guardian or former guardian, child, brother, sister, husband, wife, grandparent, grandchild, ancestral uncle or ancestral aunt within the state, or to visit such individual during his or her illness if death be imminent ... but the exercise of such power shall be subject to such rules and regulations as the commissioner of correctional services shall prescribe, respecting the granting of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape.

N.Y. Correct. Law § 113 (McKinney 2003) (emphasis added). The use of the word "may" indicates that the granting of wake visits is entirely discretionary. See *Jackson,* 2007 WL 607342, at *11. Therefore, Plaintiff has not alleged facts plausibly suggesting that the denial of the wake visit violated his procedural due process rights.

Because Plaintiff has not alleged any facts plausibly suggesting that he was deprived of a liberty interest, the complaint fails to state claim for a violation of Plaintiff's procedural due process rights. I therefore recommend that this cause of action be dismissed with leave to amend.

**B. Plaintiff Has Not Stated a Substantive Due Process Claim**

Although Plaintiff alleges that Defendants violated his right to due process, he has not specifically invoked substantive due process. However, given the special solicitude due to *pro se* civil rights plaintiffs, I have deemed the complaint to include a substantive due process claim and will address it *sua sponte* under 28 U.S.C. § 1915(e)(2). As mentioned above, Defendants have not addressed any possible substantive due process claim.

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations

omitted). Very few conditions of prison life are "shocking" enough to violate a prisoner's right to substantive due process. In *Sandin,* the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs. *Sandin,* 515 U.S. at 479 n. 4, 484. Courts have also noted that a prison official's refusal to obey a state court order to release a prisoner from disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v. Coughlin,* No. 90 Civ. 1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997); *Arce v. Miles,* No. 85 Civ. 5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991).

**\*10** Plaintiff's complaint does not allege facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking or oppressive in the constitutional sense. As discussed above, the complaint does not indicate that Plaintiff was held in unusual SHU conditions. Moreover, Plaintiff does not allege that Defendants refused to obey a state court order to release him from disciplinary confinement. Rather, he alleges that Defendants failed to immediately release him after DOCS itself administratively reversed his disciplinary conviction. (Dkt. No. 15 at ¶¶ 6(3), 7.) Therefore, the complaint fails to state a claim for violation of Plaintiff's right to substantive due process and I recommend that the claim be dismissed with leave to amend.

**C. Plaintiff Has Not Stated an Equal Protection Claim**

Plaintiff alleges that Defendants denied him equal protection by confining him to the SHU. (Dkt. No. 15 at ¶ 7.) The Equal Protection Clause requires the government to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1989). To state a claim for a violation of the Equal Protection Clause, Plaintiff must allege facts plausibly suggesting that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 WL 34002605, at *4 (N.D.N.Y. Aug.26, 1998) (Sharpe, M.J.), *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 14

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

Prisoners do not comprise a suspect or quasi-suspect class for Equal Protection purposes. *See Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997) ("[N]either prisoners nor indigents are [members of a] suspect class ....") [citations omitted]; *Holley v. Carey,* 04-CV-2708, 2007 WL 2533926, at *7 (E.D.Cal. Aug.31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") (citations omitted) *rejected on other grounds* 2008 WL 2853924; *Coleman v. Martin,* 363 F.Supp.2d 894, 902 (E.D.Mich.2005) ("Prisoners are not members of a protected class ....") (citation omitted).[FN29]

> [FN29.] I note that, in addition, sex offenders, the mentally ill, the mentally handicapped, and the indigent do not comprise a suspect class for Equal Protection purposes. *See Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *12-13, 1998 WL 34002605 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.) ("Sex offenders do not comprise a suspect or quasi-suspect class for Equal Protection purposes.") [citations omitted], *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.); *Selah v. Goord,* 04-CV-3273, 2006 U.S. Dist. LEXIS 51051, at *21 (S.D.N.Y. July 24, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened [or strict] equal protection scrutiny.") [citations omitted]; *Holley v. Carey,* 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23, 2007 WL 2533926 (E.D.Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997) ("[N]either prisoners nor indigents are [members of a] suspect class ....") [citations omitted].

In the alternative to alleging membership in a suspect class, a plaintiff may state a claim for an equal protection violation under a "class of one" theory. *Assoko v. City of New York,* 539 F.Supp.2d 728 (S.D.N.Y.2008). In order to state such a claim, a plaintiff must allege (1) that he was intentionally treated differently from other similarly situated individuals; and (2) that the disparate treatment was either (a) "irrational and wholly arbitrary" or (b) motivated by animus.[FN30] *Id.* Plaintiff has not alleged that he was treated differently from other similarly situated individuals. Therefore, Plaintiff has not stated a cause of action for violation of his rights under the Equal Protection Clause and I recommend that the claim be dismissed with leave to amend.

> [FN30.] The standard for proving a "class of one" case becomes much more stringent after a case proceeds beyond the pleading stage. After the pleading stage, a plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (that) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Nielson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005) *overruled to extent that it allows a class of one claim by a public employee Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008). *See, e.g., Cohn v. New Paltz Central School District,* 171 F. App'x 877 (2d Cir.2006).

### D. Plaintiff Has Not Stated an Eighth Amendment Claim

**\*11** Plaintiff claims that his SHU confinement and the denial of the wake visit violated his Eighth Amendment rights. (Dkt. No. 15 at ¶ 7.)

In order for Plaintiff to state a claim under the Eighth Amendment, he must show: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious;* and (2) that the defendants acted with *deliberate indifference* to his health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, 511 U.S. at 837.* In

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

considering the types of conditions that constitute a substantial risk of harm, the court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but also any indications that unwilling exposure to that risk violates contemporary standards of decency, in that society does not choose to tolerate this risk in its prisons. *Helling v. McKinney,* 509 U.S. 25, 36, 113 S.Ct. 2475, 2482, 125 L.Ed.2d 22 (1993).

Not every governmental action related to the interest and well-being of a prison inmate, however, demands Eighth Amendment scrutiny. *Sanders v. Coughlin,* No. 87 Civ. 4535, 1987 WL 26872, at *2 (S.D.N.Y. Nov 23, 1987) (citing, *inter alia, Whitley,* 475 U.S. at 319). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting, *inter alia, Whitley;* internal quotes omitted). Conduct not intended to be punishment must consist of "more than ordinary lack of due care for the prisoner's interests or safety" to be considered cruel and unusual punishment. *Id.* Mere negligence in the treatment of a prisoner, without more, is not actionable under the Eighth Amendment. See *Farmer,* 511 U.S. at 837-38.

The complaint's allegations regarding Plaintiff's SHU confinement do not state an Eighth Amendment claim. Although the service of a disciplinary sentence under ordinary conditions prevailing in the SHU "may implicate other constitutional rights, [it] does not rise to a level of constitutional significance under the Eighth Amendment and ... fails to support a claim of cruel and unusual punishment under that provision." *Monroe v. Janes,* No. 9:06-CV-0859 FJS/DEP, 2008 WL 508905 at *7 (N.D.N.Y. Feb.21, 2008) (dismissing Eighth Amendment claim where prisoner alleged merely that he had served 76 days in the SHU) (*citing Warren v. Irvin,* 985 F.Supp. 350, 357 (W.D.N.Y.1997)). Here, Plaintiff does not allege that his confinement in the SHU was served in anything other than ordinary conditions. Thus, he has not alleged any cruel and unusual punishment that would provide the foundation for an Eighth Amendment claim.

*12 The complaint's allegations regarding the denial of the wake visit fail to state an Eighth Amendment claim.

Although Plaintiff cursorily states that the denial was "unfair" and "reprisal-based," he states no facts supporting those allegations. The Court of Claims opinion attached to the complaint refers to the denial as a "ministerial error." (Dkt. No. 15, Ex. D.) A "ministerial error" is not sufficiently cruel and unusual to be actionable under the Eighth Amendment. Therefore, the complaint does not allege facts plausibly suggesting that Defendants violated Plaintiff's Eighth Amendment rights and I recommend that the cause of action be dismissed with leave to amend.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 28) be ***GRANTED*** with leave to amend.

**A N Y   O B J E C T I O N S   t o   t h i s Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance,** [FN31]

FN31. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)

(Cite as: 2009 WL 632890 (N.D.N.Y.))

*Evans,* 88-CV-5309, 1993 WL 427409, at *18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

N.D.N.Y.,2009.

Smith v. Fischer
Not Reported in F.Supp.2d, 2009 WL 632890 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.